**Mary CAMACHO, Individually and d/b/a Afuera Out Bail Bonds et al.**

v.

**Leo SAMANIEGO, Sheriff of El Paso County, Texas, and El Paso County.**

No. D–1425.

Supreme Court of Texas.

May 6, 1992.

Rehearing Overruled June 17, 1992.

Stewart W. Forbes, Max L. Christenson, Doris Sipes, Jim Darnell, Joseph (Sib) Abraham, Jr., El Paso, for appellant.

Joe Lucas, Eddie Martin, El Paso, Paul McCollum, Odessa, J. Monty Stevens, El Paso, for appellee.

## OPINION

PHILLIPS, Chief Justice.

This case involves a challenge by various bail bond issuers to the El Paso County Commissioners Court's pre-conviction bail bond filing fee. The trial court, El Paso County Court at Law No. 2, rendered summary judgment against the issuers and upheld the fee. On appeal, the court of appeals on its own motion held that the statutory county court had no constitutional authority to hear the case. Accordingly, it vacated the trial court's judgment and dismissed the suit. We hold that because the statutory county judge was, pursuant to a constitutionally valid statute, sitting as a district court judge, the trial was legally conducted in a court of proper jurisdiction. We further hold, however, that the county was not authorized to impose the fee in question. Accordingly, we reverse the judgment of the court of appeals, render a declaration that the fee is illegal, and remand to the trial court for further proceedings.

### Facts and Procedural Background

In 1983, pursuant to the authorization of the El Paso County Commissioners Court and County Bail Bond Board,[1] the Sheriff of El Paso County began collecting a two-dollar fee on each surety bail bond filed for the release of persons from the El Paso County Jail. The fee was required of all persons in the business of issuing bail bonds on each bond filed in a felony or misdemeanor charge. No fee was assessed, however, for cash or personal bonds. For a few years, the Sheriff billed the bond businesses on a monthly basis; but commencing in 1987, payment was required upon presentation of the bond. The Commissioners Court raised the amount of the fee on several occasions, the current charge being $18.00 for each bond.[2]

1. The County Bail Bond Board was created pursuant to Tex.Rev.Civ.Stat. art. 2372p–3 (Vernon Supp.1992), which is part of Title 44, authorizing the creation of a Commissioners Court for each county. Art. 2372p–3, § 5(f)(1) authorizes the Bail Bond Board

 To exercise any powers incidental or necessary to the administration of this Act, to supervise and regulate all phases of the bonding business and enforce this Act within the county, and to prescribe and post any rules necessary to implement this Act.

 This statute created a Bail Bond Board for each county having a population of 110,000 or more. Id. at § 5(a). The Board in each county is comprised of: the county sheriff (or a designee), a district judge, the county judge or a member of the Commissioners Court (or a designee), a judge of a county court or a county court at law, the district attorney (or a designee), a licensed bond issuer, a justice of the peace, the district clerk (or a designee), and the county clerk (or a designee). Id. at § 5(b).

2. While the Commissioners Court raised the bond fees, the County Bail Bond Board oversaw the administration and payment of the fees. For example, on October 2, 1986, the Board resolved that all bond filing fees would be payable in cash up-front at the time that bail was posted.

The first action challenging this fee was brought against El Paso County and its Sheriff, Leo Samaniego, on January 25, 1988, by Mary Camacho, individually and doing business as Afuera Out Bail Bonds, and Nancy Merrill, doing business as Merrill Bail Bonds.[3] They claimed that the fees violated both the Texas Constitution and the Code of Criminal Procedure. As damages, they sought a return of all fees paid pursuant to the orders, four times that sum as a penalty under Tex.Rev.Civ.Stat. art. 3909, pre-judgment interest, and costs of court.

Although the face of the petition indicated a filing in district court, by law the statutory county courts of El Paso County have, since 1987, exercised substantially equivalent jurisdiction with state district courts. When suit was filed, Section 25.-0732 of the Government Code provided in relevant part:

> (a) In addition to the jurisdiction provided by Section 25.0003[4] and other law,

**3.** Camacho and Merrill subsequently added Jim Mattox, Attorney General, as a defendant after defendants sought abatement on grounds that he was a necessary party. The Attorney General answered, stipulating receipt of notice and an opportunity to be heard pursuant to Tex.Civ. Prac. & Rem.Code § 37.006, and prayed for dismissal. The trial court orally granted the Attorney General's motion for dismissal at a hearing on November 18, 1988.

**4.** Tex. Gov't Code § 25.0003 is the general grant of jurisdictional authority to statutory county courts. When suit was filed, it provided:

> (a) A statutory county court has jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts.
>
> (b) A statutory county court does not have jurisdiction over causes and proceedings concerning *roads, bridges, and public highways* and the general administration of county business that is within the jurisdiction of the commissioners court of each county.
>
> (c) A statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in civil cases in which the matter in controversy exceeds $500 but does not exceed $5,000, excluding interest.

Tex. Gov't Code § 25.0003 (Vernon 1988) (current version, as amended, Vernon Supp.1992).

At the conclusion of fiscal year 1988, the Legislature had authorized 178 statutory county courts in 68 counties, of which 170 courts in 67 counties were operational. Texas Judicial Council & Office of Court Administration, Annual Report: Fiscal Year 1988, at 11 (1988) [hereinafter 1988 Annual Report]. The courts of each county were governed by one or more individual statutes, so that there were more than sixty different jurisdictional schemes for the statutory county courts. *See* Tex. Gov't Code Ann. §§ 25.0031–.2512 (Vernon 1988) (current version, as amended, Vernon Supp.1992). Only one statutory county court had jurisdictional limits identical to those in § 25.0003. *See id.* § 25.0962 (Guadalupe County Court at Law). No more than fourteen statutory county courts shared the same jurisdictional limits. *See id.*

§§ 25.1031, .1033 (Harris County Criminal Courts at Law). No more than six different counties had statutory county courts sharing the same jurisdictional limits. *See id.* §§ 25.0302, .0392, .0482, .0722, .1652, .2392 (Caldwell, Cherokee, Comal, Ellis, Medina, and Waller counties); *id.* §§ 25.0702, .1092, .1482, .1672, .1732, .2162 (Ector, Henderson, Liberty, Midland, Moore, and Starr counties).

The extent of this additional jurisdiction apparently bore no relation to the population or case load of the particular county. The statutory county courts in Bexar County (1990 U.S. census pop. 1,185,394) had civil jurisdiction only up to $5,000.00, while the statutory county court in Starr County (1990 U.S. census pop. 40,518) had jurisdiction extending up to $50,-000.00. Tex. Gov't Code Ann. §§ 25.0003, .0172, .2162 (Vernon 1988) (current version, as amended, Vernon Supp.1992). In a few instances, jurisdiction significantly differed even among the statutory county courts of a single county. *See, e.g., id.* §§ 25.0172, .0932, .1572, .1722, .2222, .2452 (Bexar, Grayson, McLennan, Montgomery, Tarrant, and Wichita counties). Furthermore, the differing jurisdictional relationships with the constitutional county courts created even more diversity. *See* 1988 Annual Report 86–93.

To bring more uniformity to this system, the Legislature recently passed H.B. 66, effective October 1, 1991. This act greatly increased the general jurisdiction of county courts by amending Government Code § 25.0003 to read as follows:

> (c) In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has *concurrent jurisdiction with the district court* in:
>
> (1) civil cases in which the matter in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition; and
>
> (2) appeals of final rulings and decisions of the Texas Workers' Compensation Commission, regardless of the amount in controversy.

and except as limited by Subsection (b), a county court at law in El Paso County has the jurisdiction provided by the constitution and by general law for district courts.

(b) A county court at law does not have jurisdiction of:

(1) felony cases;

(2) suits in behalf of the state to recover penalties, forfeitures, or escheat;

(3) misdemeanors involving official misconduct;

(4) contested elections; or

(5) appeals.

(c) A county court at law has, concurrent with the county court, the probate jurisdiction provided by general law for county courts.[5]

(d) Except as provided by Subsection (e), a statutory county court has, concurrent with the county court, the probate jurisdiction provided by general law for county courts.
(e) In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with probate jurisdiction.
Tex. Gov't Code Ann. § 25.0003 (Vernon Supp. 1992). The act also provides uniform qualifications for service as a statutory county court at law judge, unless otherwise provided by law. *Id.* § 25.0014. It provides that, as to counties who remit to the state certain fees and costs, the state will compensate $25,000 for each statutory county judge who does not engage in private legal practice and who had at least the uniform qualifications. Moreover, the state provides for partial remittitur of such fees and costs to the county if an excess is received. *Id.* § 25.0016. Subject to numerous exceptions and qualifications, the act provides a uniform salary for the judges. *Id.* § 25.0005. Finally, the act provides for the creation of multi-county statutory county courts, and redefines statutory county courts to include only county courts at law, county criminal courts, county criminal courts of appeals, and county civil courts at law, not statutory probate courts except for the county court at law and probate court of Brazoria County. *Id.* §§ 25.2601–.2606, 21.009(2).

While the new act markedly increases the importance of most statutory county courts, it merely reduces, rather than eliminates, the disparities between different courts. Although many of the differences are minor, there are still more than fifty different jurisdictional schemes for the statutory county courts. *See id.* §§ 25.0031–.2512; *see also* Texas Judicial Council & Office of Court Administration, Annual Report: Fiscal Year 1991, at 19–25 (1991). Only twenty-five courts have jurisdictional limits

Upon filing, the district clerk, who also serves by law as clerk of the statutory county courts as well as district courts in El Paso County in cases of concurrent jurisdiction,[6] assigned the lawsuit to County Court at Law No. 2 of El Paso County. All parties agree that the district clerk accomplished this assignment by some random selection method, not by deliberate choice. On November 18, 1988, the court, on its own motion, ordered that damages be tried separately from, and subsequent to, the action for declaratory judgment.

Some months later, Frederick S. Timmons, Jr., individually and doing business as "Get Free" Bail Bonds Co., and Alberto J. De Lachica, Jr., individually and doing business as Lachica Bail Bonds,[7] filed a substantially similar action which was assigned to the 210th District Court of El Paso County.[8] On defendants' motions,

identical to those in § 25.0003, *id.,* and no more than thirty-three statutory county courts in twenty-four counties share the same jurisdictional limits. *See* Tex Gov't Code Ann. §§ 25.-0052, .0102, .0132, .0232, .0302, .0392, .0482, .0522, .0702, .0722, .1072, .1092, .1102, .1282, .1482, .1652, .1672, .1732, .1762, .1972, .2032, .2352, .2392, .2412 (Vernon 1992) (encompassing the jurisdictional provisions of § 25.0003 and the family law jurisdiction of the district courts).

5. Similar jurisdictional provisions now exist in four other jurisdictions. *See* Tex. Gov't Code Ann. § 25.0312 (Vernon Supp.1992) (Calhoun County) (effective Sept. 1, 1989); *id.* § 25.1142 (Hopkins County) (effective January 1, 1992); *id.* § 25.1932 (Randall County) (effective Oct. 1, 1991); *id.* § 25.2142 (Smith County) (effective Sept. 1, 1991).

6. Tex. Gov't Code Ann. § 25.0732(f) (Vernon 1988). The district clerk also serves as the clerk of some statutory county courts, in at least some types of cases, in twelve other jurisdictions. *See* Tex. Gov't Code Ann. §§ 25.0702(i), .0812(i), .0942(h), .1033(*l*), .1142(h), .1392(f), .1672(g), .1722(j), .1792(*l*), .1832(g), .1852(g), .1932(g), .2032(f), .2162(i) (Vernon 1988 & Supp.1992) (Ector, Fort Bend, Gregg, Harris, Hopkins, Kleberg, Midland, Montgomery, Nolan, Orange, Panola, Randall, Rusk, and Starr counties).

7. De Lachica later amended his petition to add Metro Bail Bonds as another "dba."

8. The 210th Judicial District, like the 34th and 205th Judicial Districts, is composed of El Paso, Culberson and Hudspeth Counties. *See* Tex. Gov.Code Ann. §§ 24.136, .384, .389 (Vernon 1988). The remaining judicial districts in El

Timmons and De Lachica's suit was first transferred to County Court at Law No. 2, then consolidated with Camacho and Merrill's suit. Both sets of plaintiffs unsuccessfully sought class certification of all bond businesses and all individuals required to pay a fee prior to release on bond from the El Paso County Jail. Timmons alternatively sought to join all bond businesses in El Paso County as involuntary plaintiffs pursuant to Tex.R.Civ.P. 39. Although the court denied all these motions, the following bond businesses voluntarily intervened before trial: Armando Camacho, doing business as Camacho Bail Bonds; Alberto Lopez, Jr., doing business as Compa Bail Bonds and A-1 Bail Bonds; Fernando Lara Basoco, doing business as El Paso Bail Bonds; Dolores G. Solis, doing business as A.D. Solis Bail Bonds; Odia Harvey, doing business as Amigo Bail Bonds; and Kirsten Apodaca, doing business as Apodaca Bail Bonds.

All parties and intervenors sought summary judgment after the parties stipulated virtually all relevant facts. Defendants asserted that the orders assessing the bail bond fee did not violate the federal or state constitution or any statute, while the bond businesses moved for a partial summary judgment on all liability issues, reserving damages for later determination.

After all motions were filed, defendants for the first time contested the subject matter jurisdiction of the statutory county court. By this time, Section 25.0732 had been amended to eliminate the exclusion of appeals from the county court at law's jurisdiction. Tex. Gov't Code Ann. § 25.-0732(b) (Vernon Supp.1992). Pursuant to this amendment, the trial court held that it had jurisdiction to review the actions of the commissioners court. It then granted defendants' motion for summary judgment and denied plaintiffs' and amended intervenors' motions for partial summary judgment.

The bond businesses appealed to the court of appeals, seeking a declaration that the fee was unconstitutional and a remand for a trial on damages only. The county and sheriff did not re-urge the alleged jurisdictional defect on appeal, arguing instead that the trial court's determination was correct. On its own motion, however, the court of appeals raised the issue of jurisdiction, reversed the trial court's judgment, and dismissed the entire cause.

The court noted that under Tex. Const. art. V, sec. 8, and Tex. Gov't Code Ann. § 24.020, the district court had "appellate jurisdiction *and general supervisory control* over the County Commissioners Court," (emphasis added), and that under Tex. Gov't Code Ann. § 25.0732(d), supervisory control over the commissioners court was expressly excluded from the county court at law's jurisdiction. 825 S.W.2d 467, 468. The court of appeals rejected the trial court's holding, reasoning that the bond issuers' action did not constitute an appeal over which the trial court had jurisdiction because "[t]here is no statutory framework for an 'appeal' from such an order [of the commissioners court]." 825 S.W.2d at 469. Rather, as a "direct attack on the order" of the commissioners court, it constituted an impermissible invocation of supervisory control over the commissioners court by the county court at law.

The court of appeals also rejected Harvey's argument that the county court at law was permitted to hear the case pursuant to section 25.0732(t), also enacted in 1989.[9] Subsection (t) provided as follows:

Paso County, the 41st, 65th, 120th, 168th, 171st, 243rd, 327th, and 346th Judicial Districts, are composed only of El Paso County. *Id.* §§ 24.-143, .167, .222, .357, .266, .420, .266, .635, .492.

9. Subsection (t) was enacted by the legislature after the decision in *El Paso City County Bail Bond Board v. McCarter*, 705 S.W.2d 816 (Tex. App.–El Paso 1986, no writ). There, a bondsman complained of an order of the El Paso County bail bond board by filing an action which was randomly assigned by the district clerk to El Paso County Court at Law Number One. The judge of that court was also the chair of the bail bond board, and a district judge presided over the case without transferring it out of the statutory county court. The board, the county, and the sheriff appealed certain of the court's interlocutory orders to the Court of Appeals. The court of appeals held that since a board order could only be appealed to district court, Tex.Rev.Civ.Stat.Ann. art. 2372p–3, sec. 11 (Vernon Supp.1986), the statutory county

If any cause or proceeding is lodged with the district clerk and the district clerk files, dockets, or assigns the cause or proceeding in or to a county court at law and the county court at law does not have subject matter jurisdiction over the cause or proceeding, then the filing, docketing, or assignment of the cause or proceeding in or to a county court at law is considered a clerical error and that clerical error shall be corrected by a judgment or order nunc pro tunc. The cause or proceeding is considered filed, docketed, or assigned to the district court of the local administrative judge in the first instance rather than to a county court at law of El Paso County. The judge of a county court at law of El Paso County who acts in the cause or proceeding is considered assigned to the district court of the local administrative judge for that purpose and has all the powers of the judge of that district court under the assignment.

The court of appeals read this language not as increasing the jurisdiction of the statutory county courts, or as accomplishing a legitimate transfer to a court of proper jurisdiction, but as providing "a retroactive panacea to cure filing mistakes affecting subject matter jurisdiction." 825 S.W.2d at 469. Such a cure, the court held, "amounts to a legislative encroachment upon the powers of the judiciary." 825 S.W.2d at 469, thus violating the separation of powers clause of the Texas Constitution. *See* Tex. Const. art. II, sec. 1.[10]

The court reasoned that because the legislature in Tex. Gov't Code § 25.0732(d) refused to extend the statutory county court's jurisdiction to include supervisory power over the commissioners court, it could not effectively extend that power by

the automatic transfer mechanism of section 25.0732(t):

> What is expressly denied under the Constitution and subsection (d) cannot be indirectly accomplished through subsection (t). If the legislature has not properly conferred subject matter jurisdiction on a trial court, it cannot mindlessly produce that result by rewriting the procedural history of a fatally flawed case.

825 S.W.2d at 469. The court then held that the automatic transfer provision of subsection (t) usurped a court's inherent power to determine its own jurisdiction:

> The only "jurisdiction" of which every court is assured possession is the jurisdiction to assess its subject matter jurisdiction and act accordingly....
>
> Similarly, the question of what constitutes clerical error and what constitutes judicial error is a determination unique to the judicial function and embraced within the inherent powers of the judicial branch of government....
>
> This cause was tried in a county court at law, lacking subject matter jurisdiction.... To permit a fictional "correction" under subsection (t) would be to permit parties to circumvent the cardinal rules that subject matter jurisdiction is fundamental, cannot be waived and cannot be conferred by agreement.

825 S.W.2d at 470. Thus, the court of appeals vacated the judgment of the trial court and dismissed the entire cause of action.

*Constitutionality of Subsection (t)*

The bond businesses appeal now to this Court, filing three separate applications for writ of error which make many overlapping arguments. All parties agree with the

---

court lacked subject matter jurisdiction to issue any order. In reversing the trial court and dismissing the suit, the court of appeals explained: "While the hearings have been conducted before a district judge, all documents indicate that the chosen tribunal was a county court at law, not a district court, and that [the district judge] had assumed the role of presiding judge for the lower court." 705 S.W.2d at 818.

**10.** This section provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted.

court below that the lawsuit was not an appeal from the County Bail Bond Board's ruling, and thus was not within the express jurisdiction of the statutory county court. Yet all of them, for various reasons, argue that the trial court properly exercised jurisdiction under section 25.0732(t). Camacho, Merrill and Apodaca urge in their brief to this Court that the filing in county court was a clerical error within the legislative power to correct, that the automatic deemed transfer was a lesser included remedy to a grant of general jurisdiction to the statutory county court, that section 25.-0732(t) applies retroactively to the date suit was filed, and that the legislature acted reasonably to alleviate the fact that "the method of assigning courts in El Paso is fraught with the risk of litigating an entire lawsuit to conclusion, only to have the entire proceedings vacated without notice." Harvey particularly emphasizes that no improper subject matter jurisdiction was ever conferred on the statutory county court because the case was always deemed filed in district court, and that the court of appeals failed to accord the appropriate presumption of constitutionality to the enactment. Finally, Timmons, De Lachica, Lopez, Basoco, and Soliz suggest that even if subsection (t) did confer additional jurisdiction on the county court at law, as the court of appeals seemed to conclude, it would prevail because it was later in time than other statutory provisions.[11] The County and Sheriff agree in both their brief and in oral argument that the court below erred, and they expressly adopt Harvey's argument as to jurisdiction.

■ We agree with the parties that section 25.0732(t) is not unconstitutional, and that jurisdiction was properly vested in the district court pursuant to that act. Although the legislature could have extended the jurisdiction of statutory county courts to include general supervision over commissioners courts as well as appeals, *see Jordan v. Crudgington,* 149 Tex. 237, 241–43, 231 S.W.2d 641, 644–45 (1950), it has not chosen to do so. Recognizing the occasional difficulty of determining whether jurisdiction is proper in a statutory county court, the legislature enacted subsection (t) to provide for an automatic, retroactive presumed transfer to a district court whenever jurisdiction is confined to that court. While we have found no other statute of general or local applicability that automatically and retroactively exercises the transfer authority of an administrative judge, we know of no constitutional impediment to such a procedure.

Recently, the practical distinctions between district and statutory county courts have greatly decreased. Although statutory county courts have existed since 1907, *see, e.g.,* Act approved April 3, 1907, 30th Leg., R.S., ch. 53, 1906–1907 Tex.Gen.Laws 115 (establishing County Court of Dallas County at Law, *repealed by* Act of April 30, 1987, 70th Leg., R.S., ch. 148, § 4.02(a), 1987 Tex.Gen.Laws 534, 703, their jurisdiction was for many years confined to a portion of that constitutionally granted to constitutional county courts. Now, however, statutory county courts not only exercise substantial civil jurisdiction, as in El Paso County, but they also in some instances exercise considerable jurisdiction over criminal felonies.[12] The state now pays some, but not all, of the salary of both district and county judges, but none of the support salaries of either type of court. Tex.Gov't Code Ann. § 25.0015 (Vernon Supp.1992). Regular statutory county

---

11. Timmons, et al., also argue, in the alternative, that even if the trial court had no jurisdiction, their particular action should not have been rendered and dismissed, but should have been remanded to the 210th District Court for further proceedings since they originally filed in that court and did not move to transfer. *See Nix v. Nix,* 797 S.W.2d 64 (Tex.App.–Corpus Christi 1990, no writ). Because of our disposition of this case, we need not reach the merits of this argument.

12. *See, e.g.,* Tex. Gov't Code Ann. § 25.1142 (Vernon Supp.1992) (Hopkins County) (non-jury felony trials); *id.* § 25.1392 (Kleberg County) (conduct arraignments, conduct pre-trial hearings, and accept guilty pleas of felony cases); *id.* § 25.1572 (McLennan County) (try third degree felony cases; conduct arraignments, pre-trial hearings, and probation revocation hearings; and accept guilty pleas in felony cases; *id.* § 25.1852 (Panola County) (accept guilty pleas and conduct probation revocation hearings).

court judges may be assigned by a presiding judge to hear a matter in district court within their own county, Tex. Gov't Code Ann. § 74.054(a)(1) (Vernon Supp.1992), and retired or former statutory county court judges are eligible to serve on assignment on the same basis as former district and appellate judges. *Id.* §§ 74.054(a)(3), .055(c). Within each county, the district and statutory county court judges must jointly adopt local rules of administration. *Id.* § 74.093.

In recent years, the Legislature has made two significant changes in local court administration that are directly relevant to subsection (t). In 1985, as part of the Court Administration Act, they provided that within a county, district and statutory county court judges may exchange benches, sign a judgment or order in another court without transferring the case, and be subject to assignment of any trial or proceeding by the local administrative judge. Act of May 27, 1985, 69th Leg., R.S., ch. 732, § 2, 1985 Tex. Gen. Laws 2533, 2540 (current version, as amended, at Tex. Gov't Code Ann. § 74.094 (Vernon 1988 & Supp.1992). Two years later, a provision that thése rules did not authorize a judge to act in a case over which his own court lacked jurisdiction was repealed. Act of May 27, 1985, 69th Leg., R.S., ch. 732, § 2, 1985 Tex.Gen.Laws 2533, 2539, *repealed by* Act of June 1, 1987, 70th Leg., R.S., ch. 674, § 2.10, 1987 Tex.Gen.Laws 2515, 2515–16 (effective September 1, 1987).

Subsection (t) is consistent with these principles of court administration. Rather than conferring any additional jurisdiction on a court, it effects an automatic transfer of both case and judge to a proper court. This is no greater extension of judicial power than allowing a statutory county court judge to hear, determine, and sign a judgment in a matter pending in district court outside his court's jurisdiction without transferring the case. *See* Tex. Gov't Code Ann. § 74.094(a) (Vernon Supp.1992). Nothing in the separation of powers clause mandates that this decision must affirmatively be made at a particular time in the course of the litigation. Subsection (t) pre-

serves the district clerk's ability to assign cases randomly among both district and statutory county courts, while preventing the waste, expense and frustration of a trial in a court which lacks jurisdiction.

■ Finally, as this provision is procedural in nature, it clearly can be applied retroactively. *See Merchants Fast Motor Lines, Inc. v. Railroad Commission*, 573 S.W.2d 502, 504–05 (1978). Thus, when subsection (t) became effective on September 1, 1989, this action was deemed filed in district court as of January 25, 1988, the original date of filing.

We are not without sympathy for the court below. This is not the first, and will not likely be the last, case arising out of the failure of Texas to have a true judicial "system." The basic flaw is not with judges or clerks, and certainly not with litigants or their counsel. Rather, such confusion and inefficiency are endemic to a judicial structure with different courts of distinct but overlapping jurisdiction. *See generally* TEXAS RESEARCH LEAGUE, TEXAS COURTS, REPORT TWO: THE TEXAS JUDICIARY: A PROPOSAL FOR STRUCTURAL-FUNCTIONAL REFORM (1991); TEXAS RESEARCH LEAGUE, TEXAS COURTS, REPORT ONE: THE TEXAS JUDICIARY: A STRUCTURAL-FUNCTIONAL OVERVIEW (1990); 1 THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 367–680 (George D. Braden, ed. 1977).

We therefore hold that Tex. Gov't Code § 25.0732(t) is not unconstitutional, and that under its provision this case was tried by a court of proper jurisdiction.

### Collection of Fees

The merits of this case require us to determine whether the El Paso County Commissioners Court is authorized by statute to impose, and the Sheriff of El Paso county to collect, a pre-conviction bail bond approval fee from bail bond businesses. Although the court of appeals did not reach this issue, we address it in the interest of judicial economy to the extent the parties before us have briefed the issues.

The Texas Code of Criminal Procedure provides:

An officer may not impose a cost ... for a service for which a cost is not expressly provided by law.

Tex.Code Crim.Proc. Ann. art. 103.002 (Vernon Supp.1992). It is undisputed that the bail bond approval fee in dispute is not explicitly authorized by statute.

However, the County and Sheriff argue that Texas Local Government Code section 118.131 authorizes a commissioners court to "set reasonable fees to be charged for services by the offices of the sheriff and constables." Tex. Local Gov't Code Ann. § 118.131(a) (Vernon 1988). Because the eighteen dollar fee charged in El Paso is a reasonable "administrative" fee for the sheriff's services, it is authorized by section 118.131.

 The bond issuers do not challenge the "reasonableness" of the bond approval fee.[13] Rather, they argue that the imposition by the commissioners court of *any* bond approval fee is impermissible under our statutes. Chapter 118 of the Local Government Code pertains only to fees that the sheriff may collect in connection with services performed in civil matters, and does not authorize the commissioners court to set fees in criminal matters. The only fees that the sheriff may collect in criminal matters are enumerated in Code of Criminal Procedure sections 102.001 [14] and 102.011;[15] and these fees do not include a fee against bond issuers for bail bond approval. Thus, they argue, the criminal bail bond fee in El Paso is not authorized by statute and is thus impermissible. We agree.

In our early statutes, the Legislature enumerated in a single provision the fees that sheriffs and other state officials were authorized to collect for performing duties associated with both civil and criminal matters. The first of these provisions was enacted in Act approved Mar. 20, 1848, 2nd Leg., ch. 160, § 8, 3 H. Gammel, Laws of Texas 297, 303–04 (1898). The Legislature enacted the Code of Criminal Procedure in 1856. It included two sections relating specifically to sheriffs' fees in criminal matters, though it did not include all of the fees pertaining to criminal matters enumerated in the 1848 Act. Code of Criminal Procedure, Act approved Aug. 26, 1856, 6th Leg., Adj.S., part 5, title 4, ch. 1, art. 973 and ch. 2, art. 977 (reproduced at Digest of the General Statute Laws of the State of Texas 677–79 (1859)). Despite the existence of provisions within the Code of Criminal Procedure addressing sheriffs' fees for criminal matters, the Legislature continued to treat sheriffs' fees for civil and criminal matters together in subsequent enactments. *See* Act approved Nov. 13, 1866, 11th Leg., ch. 183, § 8, 5 H. Gammel, Laws of Texas 1146, 1150–51 (1898) (codified at 1 Paschal's Annotated Texas Digest 635 (5th ed. 1878)); Act approved Aug. 23, 1876, 15th Leg., ch. 164, § 11, 8 H. Gammel, Laws of Texas 1120, 1125–26 (1898).

By 1879, however, the Legislature began to segregate fees for civil and criminal matters. By Act approved Apr. 14, 1879, 16th Leg., R.S., ch. 81, 8 H. Gammel, Laws of Texas 1390, 1392–93 (1898) (codified at Tex.Rev.Civ.Stat., title 42, ch. 3, art. 2396 (1879)), the Legislature enumerated a fee schedule for sheriffs relating purely to civil matters. That same year, the Legislature codified the 1876 Act's sheriffs' fees for criminal matters at Tex.Code Crim.Proc., title 15, ch. 4, art. 1094 (1879). From 1879 until 1981, the two sets of fees developed on separate but relatively parallel tracks.[16]

---

**13.** Petitioners Timmons, Lachica, Lopez, and Basoco argue that if the fee is not authorized by law, it is, by definition "unreasonable." They do not, however, argue that the amount of the fee is unreasonable relative to the actual costs of the bond approval process.

**14.** This section was repealed by Act of May 29, 1989, 71st Leg., R.S., ch. 826, § 2, 1989 Tex.Gen. Laws 3784.

**15.** This statute was created by Act of May 29, 1987, 70th Leg., R.S., ch. 821, § 2, 1987 Tex.Gen.

Laws 2835. As enacted, it applied only to counties with populations of more than two million. However, when § 102.001 was repealed in 1989, Act of May 30, 1989, 71st Leg., R.S., ch. 826, 1989 Tex.Gen.Laws 3784, this limitation on § 102.011 was eliminated, *id.* § 1.

**16.** Sheriffs' fees for civil matters have subsequently been codified at Tex.Rev.Civ.Stat., title 45, ch. 3, § 4, art. 2460 (1895); Tex.Rev.Civ. Stat., title 58, ch. 3, § 4, arts. 3864–65 (1911); Tex.Rev.Civ.Stat., title 61, ch. 2, art. 3933 (1925).

During all this time, the Legislature specifically set and revised the dollar amounts of each civil [17] and criminal [18] fee that a sheriff could collect.

In 1981, however, the Legislature eliminated the "laundry list" approach in civil matters by repealing the then-governing statute, article 3933a, and giving discretionary fee-setting power to the county commissioners courts. Act of May 22, 1981, 67th Leg., R.S., ch. 379, § 1, 1981 Tex.Gen. Laws 1001 (codified at Tex.Rev.Civ.Stat. Ann. art. 3926a (amended 1987)) (current version at Tex. Local Gov't Code § 118.131 (Vernon 1988 & Supp.1992)). Article 3926a, which replaced article 3933a, provided that "[t]he commissioners court of each county may set reasonable fees to be charged for services by the offices of sheriffs and constables." *Id.*

The County and Sheriff argue that article 3926a also applies to fees in criminal matters, and that the sheriff of El Paso County is authorized under Local Government Code § 118.131, the successor statute, to collect fees for bail bond approval. On its face, this argument has some appeal, enough that Camacho and Merrill asked the trial court below to declare the statute unconstitutional rather than inapplicable. Furthermore, it is not absolutely certain that the Legislature intended to address only civil fees when it enacted article 3926a. The legislative history of House Bill 1617, which became article 3926a, is inconclusive on the question. As the Sheriff points out, the bill analysis of H.B. 1617 provided by the House Committee on Security and Sanctions notes that "[a]t present, the legislature sets the fees charged for the delivery of *civil and criminal* papers by a sheriff or constable" and also that "[t]his bill would place the responsibility of setting fees charged by sheriffs and constables under the local control of the various commissioners courts." Bill Analysis, H.B. 1617 (1981) (emphasis added).

Finally, the County and Sheriff argue that the Legislature repealed article 53.01 of the Code of Criminal Procedure in 1981 because it conflicted with the newly created general fee-setting authority of the commissioners court. As section 2 of the

---

In 1965, article 3933a was enacted, enumerating additional fees for sheriffs in counties with populations greater than 1.2 million, Act of May 26, 1965, 59th Leg., R.S., ch. 696 (codified at Tex. Rev.Civ.Stat. art. 3933a (Vernon 1966)). In 1967, article 3933 was repealed and 3933a was amended to eliminate its population requirement, Act of May 25, 1967, 60th Leg., R.S., ch. 693, 1967 Tex.Gen.Laws 1810–11.

Sheriffs' fees for criminal matters have subsequently been codified at Tex.Code Crim.Proc., title 15, ch. 4, art. 1127 (1895); Tex.Code Crim. Proc., title 15, ch. 4, art. 1173 (1911); Tex. Code Crim.Proc., title 15, ch. 4, art. 1065 (Vernon 1928); Tex.Code Crim.Proc. art. 53.01 (Vernon 1979); Tex.Code Crim.Proc. art. 102.001 (Vernon Supp.1992); and Tex.Code Crim.Proc. art. 102.011 (Vernon Supp.1992).

17. By 1979, the fees enumerated included, among others:

Service of Process in
| | |
|---|---|
| Small Claims Court | $ 5.00 |
| Justice Courts | 8.00 |
| All other courts | 10.00 |

Executing or attempting to execute writs, distress warrants, orders of sale
| | |
|---|---|
| Small Claims Court | $ 6.00 |
| Justice Courts | 10.00 |
| All other courts | 12.00 |

| | |
|---|---|
| Posting written notices | $ 5.00 |
| Taking and approving bonds | $ 6.00 |
| Jury fee | $ 5.00 |
| Executing bills of sale | $ 6.00 |

Collecting money on a sale
| | |
|---|---|
| 0–$100 | 10% |
| $101–$200 | 7% |
| $201–$1000 | 4% |
| $1001–$5000 | 2% |
| over $5000 | 1% |

(These figures are halved when money is collected without a sale.)

Act of May 28, 1979, 66th Leg., R.S., ch. 519, 1979 Tex.Gen.Laws 1103–04 (formerly codified at Tex.Rev.Civ.Stat. art. 3933a).

18. By 1965, article 53.01 of the Code of Criminal Procedure provided the following fees, among others:

| | |
|---|---|
| Executing warrants of arrest or capias, or arresting without warrant | $3.00 |
| Summoning a witness | $1.00 |
| Serving any writ not provided for | $2.00 |
| Taking and approving a bond | $2.00 |
| Each commitment or release | $2.00 |
| Jury fee | $2.00 |
| Attending prisoners on habeas corpus | $4.00 |
| Conveying a witness (per day) | $5.00 |

Act of June 18, 1965, 59th Leg., R.S., ch. 722, art. 53.01, (codified at Tex.Code Crim.Proc. § 53.01 (Vernon 1979)).

act creating article 3926a explicitly provided, "[f]ees provided for sheriffs and constables in other laws in conflict with the provisions of this Act are repealed to the extent they conflict with this Act." Act of May 22, 1981, 67th Leg., R.S., ch. 379, § 2.

■ On balance, however, we believe that article 3926a and its successor statute do not apply to criminal matters. Article 3926a constituted an amendment to the Revised *Civil* Statutes of Texas. The article that it replaced, article 3933a, dealt solely with sheriffs' and constables' fees for *civil* matters. The Civil Statutes have enumerated only civil fees for sheriffs since 1879; all fees for services rendered pursuant to criminal matters have been enumerated exclusively in the Code of Criminal Procedure since at least that date. It is reasonable to conclude that in 1981, the legislature intended the "services" for which it authorized the commissioners court to set fees to include only services associated with civil, not criminal, matters.

More importantly, the separate development of sheriffs' fees for criminal matters since 1879 continues unabated. Thus, the criminal fee structure of Code of Criminal Procedure art. 53.01, enacted in 1965, was amended by the Legislature in 1985 with no indication that it had ever been repealed. Act of May 26, 1985, 69th Leg., R.S., ch. 239, § 9, 1985 Tex.Gen.Laws 1183, recodified at Code Crim.Proc. article 102.001; Act of May 17, 1985, 69th Leg., R.S., ch. 269, § 1, 1985 Tex.Gen.Laws 1301–02. The Legislature twice again amended its fee structure for sheriffs performing services in criminal matters in 1987. Act of May 1, 1987, 70th Leg., R.S., ch. 167, § 4.01, 1987 Tex.Gen.Laws 1356 (amending Code of Criminal Procedure art. 102.001); Act of May 31, 1987, 70th Leg., R.S., ch. 821, 1987 Tex.Gen.Laws 2835–36 (amending art. 102.-001 and adding art. 102.011). Still again, in 1989, the Legislature twice spoke on the question of sheriffs' fees in criminal matters. Act of May 28, 1989, 71st Leg., R.S., ch. 347, § 1, 1989 Tex.Gen.Laws 1316–17 (amending art. 102.001); Act of May 29, 1989, 71st Leg., R.S., ch. 826, 1989 Tex. Gen.Laws 3784–85 (amending art. 102.011

and repealing art. 102.001). In none of these revisions of the Code of Criminal Procedure did the Legislature in any way recognize that the County Commissioners Court had any authority to set sheriffs' fees in criminal matters.

In 1989, moreover, the fee bill as originally introduced did attempt to give the commissioners court authority to levy sheriffs' fees in criminal proceedings. The original language of S.B. 356 provided as follows:

> The commissioners court of a county may set reasonable fees to be charged for services in criminal cases by the offices of the sheriff and constables, in the same manner as the commissioners court sets fees under Section 118.131, Local Government Code.

Tex. S.B. 356, 71st Leg., R.S. (1989). The Legislature, however, struck this provision from the final version of the Bill. The Bill Analysis of S.B. 356 states

> The committee substitute would delete the provision enabling the commissioners court of a county to set fees for services performed by peace officers.

Senate Comm. on Criminal Justice, Bill Analysis, Tex.S.B. 356, 71st Leg., R.S. (1989). As we stated in *Smith v. Baldwin*, 611 S.W.2d 611, 616–17 (Tex.1980), "the deletion of a provision in a pending bill disclose[d] the legislative intent to reject the proposal." Thus, the history of Code of Criminal Procedure article 102.011 also indicates a legislative desire to retain the "laundry list" approach to sheriffs' fees in criminal matters, and a deliberate refusal to grant the commissioners court authority to set those fees.

■ The bond businesses also argue that a bond approval fee may not be collected from them under the language of article 102.011 of the Code of Criminal Procedure, which provides that

> (a) A *defendant* convicted of a misdemeanor shall pay the following fees for services performed in the case by a peace officer:
>
> . . . . .

(5) $10 for taking and approving a bond and, if necessary, returning the bond to the courthouse;

Act of May 29, 1989, 71st Leg., R.S., ch. 826, § 1, 1989 Tex.Gen.Laws 3784 (codified at Tex.Code Crim.Proc. § 102.011 (Vernon Supp.1992)) (emphasis added). This fee is to be collected from a criminal defendant, not a bond business. The El Paso fee is levied against the bond business, and is thus not authorized under this statute.

Article 103.002 of the Code of Criminal Procedure provides that "[a]n officer may not impose a cost for a service ... for which a cost is not expressly provided by law." Because no article of the Code of Criminal Procedure provides that the commissioners court of El Paso County may levy a fee against bail bondsmen, and because Local Government Code article 118.-131 does not apply in the criminal context, article 103.002 forbids the sheriff of El Paso County from imposing the disputed fee on the bail bondsmen.

The Sheriff argues that the fee is a mere "administrative" fee used to help defray administrative costs, and not a fee assessed as a form of punishment. He argues that in *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), the United States Supreme Court upheld an Illinois bail bond fee similar to the one in El Paso.[19] This reliance is misplaced. In *Schilb*, the Supreme Court held that the Illinois statute imposing this fee did not violate the due process or equal protection clauses of the federal Constitution. No claim was made that the Illinois fee was authorized by an Illinois statute. The fee here, in contrast, is not authorized by a Texas statute. Our holding merely relates to the illegality of the El Paso Commissioners Court's fee *under Texas law,* and does not address the constitutionality of fees actually authorized by the Legislature.

### Conclusion

We hold that Texas Government Code section 25.0732(t) is constitutional and we reverse the court of appeals holding to the contrary. We also reverse the county court at law's summary judgment for the Sheriff and render judgment for the bond businesses because we find that, as a matter of law, the bond approval fees imposed on bondsmen by the El Paso County Commissioners Court and collected by the Sheriff are not authorized by any Texas statute.

We therefore remand this cause to the trial court for further proceedings.

---

19. Ill.Rev.Stat. art. 110 (1963) (permitting the state to retain one percent of a person's speci- fied bail as a "bail bond cost").