**TRAMMEL'S LUBBOCK BAIL BONDS, Gomez Bail Bonds, and Allstate Bail Bonds, Appellants,**

v.

**LUBBOCK COUNTY, Texas and Lubbock County Bail Bond Board, Appellees.**

No. 07–00–0035–CV.

Court of Appeals of Texas, Amarillo.

Feb. 22, 2001.

Rehearing Overruled March 29, 2001.

Broadus A. Spivey, Francis Pan, Spivey & Ainsworth, P.C., Austin, for appellant.

Charlotte Bingham, Crenshaw, Dupree & Milam L.L.P., Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

QUINN, Justice.

This is an appeal from cross motions for summary judgment. We are asked to determine whether the trial court correctly granted those of Lubbock County (the County) and denied that of Trammel's Lubbock Bail Bonds, Gomez Bail Bonds, and Allstate Bail Bonds (collectively referred to as the Bail Bonds). The motions arose from a suit by the Bail Bonds against the County to recoup fees assessed by the latter upon the former. Furthermore, the trial court ruled, via summary judgment, that limitations precluded recovery by the Bail Bonds. We reverse.

### Background

As previously mentioned, the dispute concerned the assessment by the County of a $10 "Bond Service Charge" upon bail bond companies within Lubbock County. The commissioners court for Lubbock County enacted the charge in 1985. However, the levy ended in 1992, after the Texas Supreme Court issued its opinion in *Camacho v. Samaniego*, 831 S.W.2d 804 (Tex.1992). Through the latter, the Texas Supreme Court held that "bond approval fees imposed on bondsmen by the El Paso County Commissioners Court and collect-

ed by the Sheriff [were] not authorized by any Texas Statute." *Id.* at 815. Only fees permitted by the Texas Code of Criminal Procedure could be levied, and the one there involved was not such a fee. *Id.*

In June of 1993, Trammel's Lubbock Bail Bonds (Trammel) served notice upon the County of its claim to recoup fees which it asserted were wrongfully paid. The County failed to return the monies within the time specified by Trammel. Thus, the latter filed suit on August 11, 1993. Through amended pleadings, Gomez Bail Bonds (Gomez) and Allstate Bail Bonds (Allstate) joined in the proceeding as parties plaintiff. However, unlike Trammel, neither Gomez nor Allstate presented the County with written notice of their claims before entering the fray. This prompted the County to file a plea to the jurisdiction of the court. That is, the County asserted that neither Gomez nor Allstate could pursue their respective claims since they had not complied with "Texas Local Government Code Annotated § 81.04(1)(a) [sic]".[1] Given this, dismissal was allegedly required.

In addition to its plea to the jurisdiction of the court, the county also had filed two motions for summary judgment. The first was against Trammel. Therein, it contended that limitations and the doctrine of laches barred recovery. The second motion concerned the allegations of Gomez and Allstate. With regard to those two businesses, it too urged limitations and laches. However, their purported failure to present the claim to the commissioners court was also mentioned as a ground war-

---

1. Section 81.041(a) of the Texas Local Government Code was renumbered effective September 1, 1999. Now found at § 89.004(a) of the same Code, it states that "[a] person may not sue on a claim against a county unless the person has presented the claim to the com- missioners court and the commissioners court has neglected or refused to pay all or part of the claim." For the sake of consistency, we will refer to the provision as § 89.004(a) of the Local Government Code.

ranting summary judgment.[2] In turn, Trammel, Gomez, and Allstate moved for summary judgment against the County. Through their motion, they averred that they had proved their claims against the entity as a matter of law and that they were entitled to recover the fees which they had paid.

The record does not reflect that the trial court acted upon the County's plea to jurisdiction. Rather, it discloses that the court 1) granted summary judgment to the County against Gomez and Allstate and denied the latter two entities recovery against the County, 2) granted Trammel summary judgment against the County "to the extent that Plaintiff Trammel[ ] . . . recover any fees paid to Lubbock County from June 17, 1991 through June 17, 1993" together with pre and post judgment interest, and 3) denied "[a]ll other relief requests either by Plaintiffs or Defendant in this matter". Furthermore, in ruling as it did, the court expressly mentioned the ground upon which it relied. That ground was limitations. Nothing was said of laches or § 89.004(a) of the Local Government Code. From this summary judgment, Trammel, Gomez and Allstate appealed; the County did not.

### Standard of Review

■ The standard applicable to reviewing appeals from cross motions for summary judgments is well-settled. We opt not to reiterate it but rather cite the parties to *National Cas. Co. v. Lane Exp., Inc.*, 998 S.W.2d 256, 259 (Tex.App.—Dallas 1999, writ denied) for its explanation. Furthermore, that the trial court expressed the grounds upon which it relied does not restrict our review to that ground. We may consider other grounds

preserved for review by the movant even though the trial court did not mention them. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

### Application of Standard

Again, the trial court relied upon the statute of limitations in ruling as it did. Furthermore, each party represents to this court that the applicable limitations period is two years from the date the chose-in-action accrued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986) (stating that one has two years after the day the cause of action accrues to bring suit); *Bowles v. Clipp*, 920 S.W.2d 752, 760 (Tex.App.—Dallas 1996, writ denied) (applying § 16.003 to circumstances like that at bar). However, dispute arises about the date on which the claims accrued. According to the County, that occurred when the fees were paid. On the other hand, the Bail Bonds assert that the claims accrued once the county commissioners court rejected them after presentation via § 89.004 of the Local Government Code. We agree with the Bail Bonds for the following reasons.

Years ago, through *City of Taylor v. Hodges*, 143 Tex. 441, 186 S.W.2d 61, 63 (1945), the Texas Supreme Court was asked to address the affect, if any, the predecessor to § 89.004(a) had upon the accrual of a cause of action against a county. At that time, the applicable statute provided that "[n]o county shall be sued unless the claim upon which suit is founded shall have first been presented to the commissioners court for allowance, and such court shall have neglected or refused to audit and allow the same, or any part

2. Each motion contained other grounds as well. Yet, for one reason or another, their impact upon the validity of the judgment be- fore us has been rendered moot. Thus, they are irrelevant and need not be addressed.

thereof." [3] TEX. REV. CIV. STAT. ANN. art. 1573 (Vernon 1925); *City of Taylor v. Hodges*, 186 S.W.2d at 63; *Jones County v. Moore*, 4 S.W.2d 289, 292–93 (Tex.Civ. App.—Eastland 1928, writ ref'd.). Furthermore, in *Taylor*, the commissioners court did not reject the City's claim until the summer of 1943. Given this and the wording of art. 1573, the Supreme Court held that "the right of the City to sue accrued and limitations began to run from that date", *i.e.*, the date on which the commissioners court rejected the demand. *Id.* at 63–64. In so holding, the court expressly relied upon the decision of *Jones County v. Moore, supra.* The latter also dealt with art. 1573 and its affect upon the accrual of a cause of action against a county. Furthermore, in determining when a cause of action accrued, the *Jones County* court defined cause of action as the "right to institute suit." *Jones County v. Moore*, 4 S.W.2d at 293. And, because art. 1573 barred initiation of the suit until the claim was rejected, it concluded that the chose-in-action did not accrue until the claim was presented to and rejected by the commissioners court. *Id.* at 293. It was this holding that the Supreme Court not only acknowledged but adopted in *Taylor.*

■ So, what we have before us is a decision by the Texas Supreme Court involving the application of a statute identical to § 89.004(a) of the Local Government Code. In applying that statute, we have the same court of last resort for Texas declaring that a cause of action against a county does not accrue for purposes of limitations until the claim is presented to and rejected by the county commissioners court. Moreover, that court has neither expressly rejected or modified the portion of *Taylor* applicable at bar since it rendered *Taylor.* Consequently, we must conclude that *Taylor* remains valid and binding authority in this state.[4]

■ Next, the record discloses that Trammel presented its claim to the County in June of 1993 and that the claim went unpaid by the date specified in the demand letter, *i.e.*, July 17, 1993.[5] So, as per *Taylor*, the claim against the County did not accrue until it was purportedly rejected on July 17, 1993. Furthermore, since Trammel sued the County 25 days after the claim accrued, that is, on August 11, 1993, and since August 11, 1993 is a date well within two years of July 17, 1993, it

3. Comparison of art. 1573 of the Revised Civil Statutes with its successor, § 89.004 of the Local Government Code, reveals the two provisions to be identical in all material aspects.

4. The County cites us to several opinions which tend to question the accuracy of *Taylor*. *E.g. Smith v. Wise County*, 187 S.W. 705 (Tex. Civ.App.—Fort Worth 1916, no writ); *Stegall v. McLennan County*, 144 S.W.2d 1111 (Tex. Civ.App.—Waco 1940, writ dism'd judg't correct). Yet, each of those decisions was rendered by intermediate courts of appeal. And, such courts are not free to overrule the Supreme Court or reject its judicial prognostications. To paraphrase a respected jurist of this state, while the courts of last resort in Texas may not be superior in intellect, they are, nonetheless, superior in rank. And, that rank requires our deference. So, to the extent that

*Smith, Stegall,* and like opinions by intermediate courts of appeal purport to overrule or ignore *Taylor*, they themselves lack authoritativeness because they do so. It may well be that *Smith* and *Stegall* are founded on solid, reasonable common law theory. Yet, we cannot follow them due to *Taylor*. We can only invite the Supreme Court to reconsider *Taylor* if it cares to.

5. Whether the County's failure to heed the deadlines set by Trammel constitutes a rejection of the claim is not before us, nor is the question of whether § 89.004 of the Local Government Code requires formal action on the part of the County. The parties at bar apparently assume that the failure to accede to the demand within the specified time equated a rejection of the claim. We defer to their assumption for purposes of this appeal.

cannot be said that limitations bars the action.

■ Nor can it be said that the claims of Gomez and Allstate are time barred. Indeed, the record discloses that when they joined Trammel's suit, they had yet to present their claims to the County. The claims having yet to be presented, it cannot be said that the County had rejected them. Because the County had yet to reject them, they had yet to accrue. *City of Taylor v. Hodges, supra.* And, because they had yet to accrue they certainly could not have been untimely when joined in the Trammel action. In sum, limitations did not bar the Bail Bonds from pursuing their suit against the County. Since the trial court held otherwise, it erred. Yet, that does not end our inquiry for the County sought summary judgment on other grounds. And, to the extent that those other grounds could warrant summary judgment, we must consider them as well. *Cincinnati Life Ins. Co. v. Cates, supra.* The first which we consider is the doctrine of laches.

■ According to the County, laches prevented each claimant from proceeding irrespective of whether limitations ran. Though related, laches and the expiration of limitations are two distinct theories. Admittedly, at the heart of each lies the concept of time and its lapse. Yet, laches come into play even though limitations has yet to expire. *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes,* 907 S.W.2d 904, 912 (Tex.App.—Houston [1st Dist.] 1995, writ denied). This is so because it involves more than the mere passage of time, *Gulf, Colorado, & Santa Fe Ry. v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 500 (1958) (stating that the mere lapse of time raises no presumption of laches), and this additional feature is what distinguishes it from mere limitations.

■ The feature about which we speak is the affect wrought by the passage of time. In other words, for laches to arise one must unreasonably delay in asserting a legal or equitable right and the delay must cause another to, in good faith, change his position to his detriment. *Caldwell v. Barnes,* 975 S.W.2d 535, 538 (Tex.1998); *Rogers v. Ricane Enterprises, Inc.* 772 S.W.2d 76, 80 (Tex.1989); *Gulf, Colorado, & Santa Fe Ry. v. McBride,* 322 S.W.2d at 500. Additionally, the detriment contemplated must entail something other than the loss of what would have been retained if the suit had not been brought. *Esso Int'l, Inc. v. SS Captain John,* 443 F.2d 1144, 1150 (5th Cir.1971). Rather, one invoking laches must demonstrate that his ability to pursue a right or defense has been impaired because of the delay. *Id.* So, what is needed for laches to apply, and what distinguishes the theory from mere limitations, is the need for prejudice due to delay.

■ Admittedly, we uncovered a case intimating that extreme delay which goes unexplained may permit the fact finder to infer the existence of prejudice as a matter of law. The case is *Dull v. Blum,* 68 Tex. 299, 4 S.W. 489 (1887) wherein the claimant postponed urging his rights for twenty years. However, the Supreme Court restricted the scope of *Dull* in *Turner v. Hunt,* 131 Tex. 492, 116 S.W.2d 688 (1938, opinion adopted). In *Turner,* it held that "[e]xcept in case[s] of extreme delay like that in *Dull* ... delay, which works no injury or no disadvantage to another, is not such laches as will bar a right." *Id.* at 691. Furthermore, since the period involved in *Turner* consisted of "a little less than ten years", the court refused to hold that it equated the type of extreme delay warranting an inference of prejudice. *Id.* So, to the extent that the mere lapse of

time itself may give rise to laches, the circumstances in which that is true are very limited.

Next, in applying the foregoing elements to the situation before us, we see that the County proffered no evidence illustrating that the Bail Bonds' decision to postpone suit impeded its ability to defend against the claims. Nor did it tender any depicting that it lost some right or the ability to establish some right due to the delay. Instead, the evidence presented merely illustrated that it would incur litigation costs as a result of the suit. Such expense, however, is an incident to most every suit and not of the kind sufficient to satisfy the elements of laches. Furthermore, under no interpretation of the record can it be said that the Bail Bonds postponed suit for ten or more years after first paying the fees in dispute. Indeed, the longest delay was that of Trammel. It sued approximately seven years after its first payment. Thus, we have before us neither evidence of actual prejudice as described in *Esso International* nor inferred prejudice as described in *Dull* and *Turner.* So, the doctrine of laches would not support the trial court's summary judgment.[6]

▇▇▇ Nor do we find the allegation regarding the failure of Gomez and Allstate to present their claims to the County before suit adequate basis for summary judg-

ment. This is so because after joining as parties plaintiff (and several years prior to rendition of the summary judgment) both Gomez and Allstate presented their respective claims to the County in August of 1997. Similarly undisputed is the fact that the claims remain unpaid to date. Assuming that the failure to pay equates rejection, it becomes clear that the elements of § 89.004(a) of the Local Government Code were satisfied long before the County invoked § 89.004(a) as a bar. And, contrary to the protestation of the County, that presentation of the claim occurred *after* they joined in the suit did and does not mandate dismissal of the cause. This is so because § 89.004(a) is not jurisdictional. *Essenburg v. Dallas County,* 988 S.W.2d 188, 189 (Tex.1998). Thus, when one attacks another for failing to comply with the statute, the sole relief available to the former is abatement of the proceeding until compliance has occurred, not dismissal. *Garcia–Marroquin v. Nueces County Bail Bond Board,* 1 S.W.3d 366, 374 (Tex. App.—Corpus Christi 1999, no pet.).

In sum, none of the grounds asserted by the county as justifying summary judgment actually justified summary judgment. In concluding otherwise, the trial court erred. Thus, we sustain the first issue on appeal. Yet, this does not end our duties *viz* this appeal. Before us remains the

6. We recognize that the County cites cases involving circumstances similar to those at bar and that those cases denied relief based on laches. *E.g., Camacho v. Samaniego,* 954 S.W.2d 811 (Tex.App.—El Paso 1997, writ denied); *Wade v. Jackson County,* 547 S.W.2d 371 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Yet, neither opinion addressed whether the complainant's delay caused the defendant to suffer harm. Instead, the respective courts simply concluded that a lapse of time sufficient to trigger limitations sufficed to establish laches. In so holding, the decisions contravened *Caldwell, Ricane, Gulf, Turner,* and like Supreme Court dictate. Fur-

thermore, the delay in each was not of the extreme character as demanded by *Turner* and *Dull.* So, given the absence of evidence of prejudice, actual or inferred, and their failure to comport with binding precedent, we find neither *Wade* nor the El Paso Court of Appeal's decision in *Samaniego* authoritative on the topic of laches. And, to the extent that *Taylor* itself referred to the doctrine of laches, it merely said that "[n]o question of laches in filing the claim is presented." *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61, 64 (1945). It did not hold, contrary to the intimations of the County, that laches would have barred the claim if it had been asserted.

second issue involving whether the trial court erred in denying the Bail Bonds' motion for summary judgment. That question we now address.

■ As previously mentioned, the Bail Bonds moved for summary judgment. Their motion was based upon the ground that no statute permitted the County to assess the $10 fee in question. That the County authorized the assessment of the $10 fee in 1985 is undisputed. Similarly undisputed are the facts 1) that the County assessed the fee upon Trammel, Allstate, and Gomez until the Texas Supreme Court issued its decision in *Camacho v. Samaniego, supra,* in 1992, and 2) that the total amount of fees paid by Trammel, Gomez, and Allstate were $154,050.00, $11,400.00, and $30,630.00, respectively.[7] Additionally, in *Camacho v. Samaniego,* the Supreme Court recognized that statute barred a county and its sheriff from assessing a fee for services related to a criminal matter, which fee was not expressly allowed by statute. *Camacho v. Samaniego,* 831 S.W.2d at 811–812, *quoting,* TEX. CODE CRIM. PROC. ANN. Art. 103.002 (Vernon Supp.1992).[8] Yet, in the *Camacho* holding lies the indicia that precludes summary judgment in favor of the Bail Bonds. While it is clear that the charge before us was enacted and assessed and that *Camacho* prohibits the assessment of fees unauthorized by statute, we are unable to determine the extent, if any, to which the fees at bar were unauthorized. According to the record, same were

used to provide various services to bail bond companies. Included in these services were the provision of copies, forms, and "printouts". At that time, and to this date, statute permitted governmental entities to charge for copies provided to others. *See e.g.,* TEX. REV. CIV. STAT. ANN. art. 6251, § 17 *recodified at,* TEX. GOV. CODE ANN. § 552.261 *et. seq.* (Vernon Supp. 2001). Furthermore, labor expended in creating the copies could, under certain circumstances, be factored into the ultimate charge levied for the copies. *Id.* More importantly, the extent to which the fee at bar represented a payment for copies (and labor incurred in providing same) cannot be determined from the appellate record. So, at the very least, the summary judgment evidence before us creates a material question of fact concerning the amount of fees paid which were of the type condemned in *Camacho.* And, this question of fact precludes the entry of summary judgment in favor of the Bail Bonds.

■ Due to our rulings as described above, reversal is necessary. However, we anticipate that the County will re-urge its "pass-on" defense once the cause is remanded. Given that and the dispute surrounding the viability of the defense, the interests of justice compel us to address it. *Cornell & Co. v. Pace,* 703 S.W.2d 398, 404 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.) (recognizing that courts of appeal may address issues which do not alter the disposition of the appeal but which will arise when the cause is pursued on remand).

---

7. While portions of the summary judgment record indicate that Trammel and Gomez owed the County various sums for "forms, copies, and other services", the County did not plea set-off as an affirmative defense. Nor did it urge set-off or the like as a ground to defeat summary judgment. Consequently, we cannot consider the potential defense as basis to defeat summary judgment in favor of the Bail Bonds. TEX. R. CIV. PROC. 166(c).

8. Article 103.002 of the Texas Code of Criminal Procedure currently states that "[a]n officer may not impose a cost for a service not performed or for a service for which a cost is not expressly provided by law." TEX. CODE CRIM. PROC. ANN. art. 103.002 (Vernon Supp. 2001).

In effect, the County argues that since the Bail Bonds passed the fee on to their clients and their clients paid same, they suffered no damage.[9] And, having suffered no damage, they allegedly can recover nothing from the County. This is little more than asserting that one compensated for a wrong from a source unrelated to the supposed tortfeasor should not be able to recover anything from the tortfeasor. When viewed in those terms, the contention violates the collateral source rule. The latter precludes a tortfeasor from reaping the benefit of a payment conferred upon the injured party from sources other than the tortfeasor. *Jones v. Red Arrow Heavy Hauling, Inc.,* 816 S.W.2d 134, 136 (Tex.App.—Beaumont 1991, writ denied). Furthermore, the bar arises when 1) the payment was procured independently of the tortfeasor and 2) the tortfeasor lacks privity with regard to the payment. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 934 (Tex. 1980). Here, nothing of record indicates that the County assisted the Bail Bonds in obtaining or arranging payment of the fee from those seeking bail bonds. Rather, the Bail Bonds were solely responsible for same. Nor can it be said that the County was in a position of privity with Bail Bonds so as to invest it with some right to enforce or collect payment of the particular fee from the client. *See Lujan v. Tampo Mfg., Co.,* 825 S.W.2d 505, 511 (Tex.App.— El Paso 1992, no writ) (defining privity as a mutual or successive relationship to the same rights of property). Again, the edict passed by the County imposed the obligation to pay upon the Bail Bonds, not their clients. And, it was the decision of the Bail Bonds to seek it from their clients. So, the County was not in privity with regard to the obligation of the clients to pay an extra $10 to the Bail Bonds. So,

before we can recognize the County's "pass-on" defense, we would have to reject the collateral source rule, and that is something we opt not to do.

Furthermore, our Supreme Court has had opportunity to implement the "pass-on" defense in other settings. Yet, it has not. *See Abbott Laboratories Inc. v. Segura,* 907 S.W.2d 503 (Tex.1995). One of the reasons underlying its decision involves the morass which would ensue in determining who among all the potential plaintiffs actually absorbed part of the cost passed-on, and, therefore, is entitled to reimbursement. *Id.* at 506, *quoting, Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). That problem is no less present at bar.

Finally, not even the opinion cited by the County in support of its defense suggests that the defense is legitimate. Indeed, in *Bowles v. Reed,* 913 S.W.2d 652 (Tex.App.—Waco 1995, writ denied), the appellate court merely *"presume[d]"* the trial court accepted" the theory in explaining why it was inapplicable. *Id.* at 660 (emphasis added). It did not recognize the defense or otherwise suggest that it was legitimate.

In view of its conflict with the collateral source rule and the Supreme Court's hesitancy to approve it, the "pass-on" defense is not one which we legally recognize in situations like that at bar. Thus, it alone cannot prevent recovery by the Bail Bonds.

Accordingly, for the reasons stated above, we reverse the summary judgment rendered below and remand the cause for further proceedings.

---

**9.** While it may be that Trammel and Gomez recovered an additional $10 from their clients

once the County began levying the fee, nothing of record indicates that Allstate did so.