LUBBOCK COUNTY, TEXAS,
Petitioner,

v.

TRAMMEL'S LUBBOCK BAIL
BONDS, Gomez Bail Bonds, and All-
state Bail Bonds, Respondents.

No. 01–0406.

Supreme Court of Texas.

Argued Feb. 20, 2002.

Decided June 20, 2002.

Rehearing Denied Aug. 22, 2002.

Charlotte Bingham, Lubbock, for Petitioner.

Broadus A. Spivey, Francis Y. Pan, Spivey & Ainsworth, Austin, for Respondent.

Justice RODRIGUEZ delivered the opinion of the Court.

The issues in this case are: (1) whether Lubbock County's bail-bond service charge is unlawful because it is not authorized by any statute; (2) whether the presentment statute, Texas Local Government Code section 89.004(a), is jurisdictional; and (3) whether the presentment statute delays accrual of a claim for the reimbursement of funds against a county until the claim has been presented to and is rejected by the county commissioners court. We conclude that fact questions remain on the extent to which the bail-bond service charge was used for providing copies to the bail-bond companies and was thus authorized by statute. We also reaffirm that the presentment statute is not jurisdictional. Further, we overrule *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61 (1945), and *Jones County v. Moore,* 4 S.W.2d 289 (Tex.Civ.App.-Eastland 1928, writ ref'd), and hold that the presentment statute does not delay the accrual of a cause of action against a county for reimbursement of unauthorized charges. Accordingly, we affirm the court of appeals' judgment in part, reverse in part, and render judgment as explained below.

## I.

In 1985, Lubbock County began charging bail-bond providers a ten-dollar bond service charge per criminal defendant. In exchange, the County gave the bail-bond providers copies of bonds and print-outs of records to help them track their bonds. Trammel's Lubbock Bail Bonds, Gomez Bail Bonds, and Allstate Bail Bonds paid the service charges on each bond until June 1992, when the County discontinued the service charge in the wake of this Court's decision in *Camacho v. Samaniego,* 831 S.W.2d 804 (Tex.1992). In *Camacho,* we held that El Paso County's system of preconviction bail-bond fees lacked statutory authority. *Id.* at 815.

### A.

On June 17, 1993, Trammel's served a presentment letter on the County under section 89.004(a) of the Local Government Code. That section provides: "A person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim."[1] Tram-

---

1. When this case arose, the presentment statute was codified at Local Government Code

mel's letter demanded a refund of all previously paid fees, threatening to sue if the County failed to refund the money within thirty days. The County did not respond, and Trammel's filed suit on August 11, 1993. Gomez and Allstate intervened as plaintiffs on March 11, 1994, but did not serve the County with a presentment letter until August 19, 1997.

On December 28, 1998, the County moved for partial summary judgment against Trammel's, alleging that limitations, or alternatively laches, barred recovery on any claim accruing more than two years before Trammel's presented its claim to the County. The County also moved for summary judgment on Gomez's and Allstate's claims, alleging that their failure to present their claims to the County before intervening in the suit prevented the court from exercising subject matter jurisdiction over those claims. In addition, the County argued that limitations barred any possible recovery by Gomez and Allstate because presentment was made five years after the bond service charge was discontinued. On June 17, 1999, Trammel's, Gomez, and Allstate filed a joint motion for summary judgment against the County, arguing that they were entitled, as a matter of law, to a refund of all bond service charges they had paid because the service charge was not authorized by statute and was therefore unlawful under this Court's holding in *Camacho*.

The trial court concluded that limitations barred Trammel's claims for service charges paid before June 17, 1991, two years before Trammel's presented its claim to the county commissioners court. The trial court therefore granted the County's motion against Trammel's and rendered a partial summary judgment for

the County on Trammel's claims accruing before June 17, 1991. However, the trial court granted in part Trammel's motion for summary judgment, awarding Trammel's the bond service charges it had paid from June 17, 1991, to June 17, 1993. The trial court also granted the County's motion for summary judgment against Gomez and Allstate, ruling that limitations barred all their claims, and rendered judgment that they take nothing. The trial court denied Gomez's and Allstate's motion. Only the bail-bond companies appealed to the court of appeals.

### B.

With regard to the bail-bond companies' claim that the bond service charge was not authorized by any statute and was therefore unlawful under this Court's holding in *Camacho*, the court of appeals concluded that fact issues precluded summary judgment. 60 S.W.3d 145, 152. The court of appeals held that material questions of fact remained regarding the extent to which the service charge was for the copies and print-outs provided to the bail-bond companies and was thus authorized by Texas Government Code section 552.261. *Id.*

Following our opinion in *Essenburg v. Dallas County*, 988 S.W.2d 188 (Tex.1998), the court of appeals further held that section 89.004(a) is not a jurisdictional prerequisite to suit. *Id.* at 151. Finally, the court of appeals held that limitations does not begin to run in suits against counties until presentment to and rejection by the commissioners court. *Id.* at 149. Therefore, the court of appeals concluded, limitations did not begin to run on Trammel's claim until July 17, 1993 (the date specified in Trammel's demand letter), when the claim was impliedly rejected by the Coun-

---

section 81.041(a). In 1999, the Legislature recodified it without substantive change at section 89.004(a). Act of April 23, 1999, 76th Leg., R.S., ch. 62, § 13.03(b), 1999 Tex. Gen. Laws 127, 340. We will refer to the current statute in this opinion.

ty. *Id.* Similarly, because Gomez and Allstate had not yet presented their claims to the County when they joined the suit, their claims had not yet accrued and limitations did not bar them. *Id.* at 150. Accordingly, the court of appeals reversed the trial court's judgment and remanded the case to the trial court to determine the extent, if any, to which the bond service charge was authorized by section 552.261 of the Government Code.

## C.

◼ The bail-bond companies filed a petition for review, asking us to decide whether they were entitled to full reimbursement, as a matter of law, of all monies paid because the bond service charge was not authorized by statute. The County also filed a petition for review, asking us to decide: (1) whether Gomez's and Allstate's failure to present their claims before intervening was a jurisdictional bar to suit; and (2) whether the court of appeals erred in concluding that limitations did not begin to run until Trammel's claim was presented to and rejected by the County. When both sides have moved for summary judgment and one motion is granted and one denied, we should determine all questions presented and render the judgment the trial court should have rendered. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000).

## II.

◼ We first consider whether the bond service charge in question is unlawful because it is not authorized by statute. Texas Code of Criminal Procedure article 103.002 bars a county from imposing a charge in a criminal matter for any service not "expressly provided by law." TEX.

CODE CRIM. PROC. art. 103.002. The bail-bond companies assert that *Camacho v. Samaniego*, 831 S.W.2d 804 (Tex.1992), establishes that the bond service charge the County collected was unauthorized as a matter of law. In *Camacho*, we examined the validity of a bail-bond approval fee that was allegedly authorized under Texas Local Government Code section 118.131, which provides that the "commissioners court of a county may set reasonable fees to be charged for services by the offices of the sheriff and constables." [2] We held that this statute applies only to civil matters, and thus could not have authorized the bail-bond approval fee at issue. No other statute was alleged to explicitly authorize the fee. *Id.* at 812. Accordingly, we held that the fee was invalid.

Here, the summary judgment evidence included deposition testimony from the Lubbock County Treasurer stating that the County provided copies of bonds and print-outs of records to the bail-bond companies when the bond service charge was being collected. The Treasurer went on to state that after the service charge was discontinued, it was necessary to charge the companies for these same copies and print-outs. By statute, a governmental body may charge for providing copies of public information. TEX. GOV'T CODE § 552.261 (formerly TEX.REV.CIV. STAT. ANN. art. 6252–17a § 9(a)). The County argues that this statute authorizes the bond service charge at issue. The record is unclear on the extent to which the bond service charge was used for providing copies to the bail-bond companies. Therefore, we agree with the court of appeals that the statute could authorize the charges, and we conclude that a material fact question exists concerning the extent to which the

---

**2.** This statute was originally located at TEX REV.CIV. STAT. ANN. art. 3926a. We will refer to the statute's current version.

bond service charge collected was used to pay for copies and print-outs. Therefore, we remand to the trial court to consider whether the service charge the County collected was authorized by statute in whole or in part.

■ Although we conclude that a fact question exists regarding the extent to which the bond service charge was used for providing copies to the bail-bond companies, we must consider the fact that the County did not appeal the trial court's judgment. Texas Rule of Appellate Procedure 25.1 provides that a "party who seeks to alter the trial court's judgment ... must file a notice of appeal." TEX.R.APP. P. 25.1(c). The County did not file a notice of appeal. Only the bail-bond companies filed a notice of appeal. Because the trial court granted Trammel's summary judgment on its claim for monies paid two years before presentment, and the County did not appeal that judgment, the County cannot now seek to alter that judgment to eliminate Trammel's recovery. This challenge was waived when the County did not file a notice of appeal.[3]

### III.

■ In *Essenburg v. Dallas County*, 988 S.W.2d 188 (Tex.1998), this Court held that the presentment statute is a nonjurisdictional notice statute. *Id.* at 189. The presentment statute is "intended to advise the commissioners' court of the claim and afford it an opportunity to investigate and adjust it without litigation." *Id.; see also Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 249 (Tex.2002) (stating that the presentment statute "merely establishes a condition precedent to suit"). Accordingly, the remedy for a party's failure

to present a claim to the county commissioners court before filing suit would not be dismissal of the suit, but rather abatement until the claim is presented to the commissioners court. *Cf. Hines v. Hash*, 843 S.W.2d 464, 468–69 (Tex.1992) (concluding that the proper remedy is abatement "if a plaintiff files an action for damages under the DTPA without first giving the required notice, and a defendant timely requests an abatement"). Thus, the court of appeals correctly held that Gomez's and Allstate's failure to present heir claims to the commissioners court before intervening in the suit was not an appropriate basis for dismissal.

### IV.

■ Finally, we examine the court of appeals' conclusion that limitations does not begin to run on a cause of action for reimbursement of funds against a county until the claim has been presented to and rejected by the county commissioners court. In this case, section 16.003(a) of the Texas Civil Practice and Remedies Code is the applicable limitations statute. *See* TEX. CIV. PRAC. & REM.CODE § 16.003(a); *Bowles v. Clipp*, 920 S.W.2d 752, 760 (Tex.App.-Dallas 1996, writ denied). This statute provides that a person must bring suit for the taking of personal property "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003(a). The parties dispute the date on which the cause of action accrued. The County argues that the injury, and therefore the cause of action, accrued when the bail-bond companies paid each ten-dollar bond service charge. On the other hand, the bail-bond companies argue that the cause of action did not accrue

---

**3.** For the same reasons, the County may not now urge its "pass-on" defense with regard to Trammel's claims. And, because we remand to the trial court to consider whether Gomez and Allstate have a claim against the County, we do not consider the County's "pass-on" defense to their claims.

until their claims had been presented to and rejected by the Lubbock County commissioners court.

Relying on this Court's holding in *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61 (1945), the court of appeals agreed with the bail-bond companies. In *Hodges,* this Court considered a suit between two governmental entities—a city and a county—concerning the unauthorized payment of public funds from one to the other. The City of Taylor sued Williamson County for the reimbursement of these funds. In *Hodges,* we followed the reasoning of *Jones County v. Moore,* 4 S.W.2d 289 (Tex.Civ.App.-Eastland 1928, writ ref'd), which held that a private citizen's "right to institute suit" did not accrue until after his claim had been rejected by the commissioners court. *Id.* at 293. Following that analysis, we held in *Hodges* that the right to sue accrued, and limitations began to run, on the date the county rejected the claim.

The court of appeals in this case followed established law. It is not the function of a court of appeals to abrogate or modify established precedent. *See Stark v. American Nat'l Bank of Beaumont,* 100 S.W.2d 208, 212 (Tex.Civ.App.-Beaumont 1936, writ ref'd). That function lies solely with this Court. *Id.* Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a proposition of law, the decision is considered binding precedent. *See Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964). However, circumstances occasionally dictate reevaluating and modifying prior decisions. This Court may modify judicially created doctrines, *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985), and in this instance such a change is warranted.

Under *Hodges,* a party with a claim against a county could delay the running of limitations indefinitely merely by not presenting its claim. This is inconsistent with Texas law governing statutes of limitations. In general, a cause of action accrues and limitations begins to run when "the wrongful act effects an injury." *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 461 (Tex.1996) (citation omitted). We conclude that this is the proper standard in claims such as the one before us today.

We announce a new rule in cases in which a party seeks reimbursement from a county for unauthorized charges: the cause of action accrues when payment to the county is made because that is when the injury occurs, not when the claim has been presented to and rejected by the commissioners court. We therefore overrule *City of Taylor v. Hodges* and *Jones County v. Moore* to the extent they hold that the right to sue accrues, and limitations begins to run, on the date the county rejects the claim. Thus, in this case, the injury occurred when each bond service charge was paid by the bail-bond companies. Gomez and Allstate, therefore, may not recover damages for any service charge paid more than two years before they joined the lawsuit. Because the County did not appeal the trial court's judgment in favor of Trammel's, that judgment stands.

## V.

In conclusion, we hold that limitations bars Gomez's and Allstate's claims for payments made before March 11, 1992, two years before Gomez and Allstate joined the suit. We therefore reverse that part of the court of appeals' judgment remanding those claims, and we render judgment that Gomez and Allstate take nothing on those claims. With regard to Gomez's and Allstate's claims for a refund of bond service charges paid from March 11, 1992, to

March 11, 1994, we hold that fact issues exist concerning whether the charges were made pursuant to Texas Government Code section 552.261, and, therefore, we affirm that part of the court of appeals' judgment remanding those claims to the trial court for further proceedings. However, because the County failed to file a notice of appeal in the court of appeals, we reverse that part of the court of appeals' judgment remanding Trammel's claims and render judgment that Trammel's recover the bond service charges it paid during the two-year period preceding June 17, 1993.