Motion for Rehearing Overruled; Opinion of July 24, 2003, Withdrawn;
Reversed and Rendered and Opinion on Rehearing filed Sept









Motion for Rehearing Overruled;
Opinion of July 24, 2003, Withdrawn; Reversed and Rendered and Opinion on
Rehearing filed September 4, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01282-CV

____________

 

RONALD ANDREWS, INDIVIDUALLY, 

AND AS EXECUTOR OF THE ESTATE OF 

RAWLE ANDREWS, DECEASED, Appellant

 

V.

 

ALDINE INDEPENDENT SCHOOL DISTRICT,
Appellee

 



 

On Appeal from Probate Court No. 4

Harris County, Texas

Trial Court Cause No. 324,137-402

 



 

O
P I N I O N   O N   R E H E A R I N G 

We
withdraw our opinion of July 24, 2003, and issue this opinion on
rehearing.  Rawle Andrews died on July
12, 2001, leaving behind him substantial tax liabilities.  Shortly thereafter, his son was appointed
executor of his estate and a dependent administration was opened.  








Aldine
Independent School District filed a probate claim against the estate on
November 16, 2001, asserting delinquent ad valorem taxes of $217,318.  No action was taken on the claim.  Six months later, Aldine notified the estate's
representative it had posted three of the properties for foreclosure sale.  This suit ensued.  

Both
parties moved for summary judgment.  The
estate's representative sought a declaration that Aldine's claims were barred
by limitations, as it failed to file suit within ninety days after its claims
were rejected by operation of law.[1]  Aldine sought the taxes and foreclosure. The
Probate Court granted Aldine's motion and denied the representative's.  We review both motions, determine all
questions presented, and render the judgment the trial court should have
rendered.[2]

The Probate Code and Taxes








As
a part of extensive revisions to the Tax Code in 1999, the Legislature added
section 5C to the Texas Probate Code to govern jurisdiction of ad valorem taxes
disputes involving a dependent administration of a decedent's estate.[3]  Under that section's provisions, jurisdiction
depends on where the probate proceedings and the taxable property are
located.  If they are in different
counties, courts in the county where the property is located have sole
jurisdiction of the tax suit.[4]  But if both probate and property are in the
same county (as in this case), taxing units may opt for probate court
jurisdiction by presenting a claim to the personal representative, or opt out
of it by refraining from doing so.[5]








Here,
Aldine filed a claim with the estate's representative, thus opting for probate
jurisdiction.  By opting for probate
jurisdiction, Aldine subjected its claim to the rules governing enforcement of
claims in probate proceedings.[6]  Pursuant to those rules, when the estate's
representative took no action on the claim within 30 days, it was deemed
rejected by operation of law.[7]  Once a claim against an estate is rejected,
the claimant must file suit within 90 days or the claim is forever barred.[8]  Aldine did not.  Assuming section 5C applies, Aldine's claim
appears to be barred.

Claims vs. Claims for Money

Aldine
concedes this case falls within the express applicability provision of section
5C.[9]  But it argues section 5C does not apply here
for three other reasons.  First, Aldine
argues the section only applies to "claims for money," while its
claims are "in rem."  For several
reasons, we disagree.

First,
section 5C mentions only "claims," not "claims for
money."  The Probate Code defines
"claims" to include "liabilities of a decedent which survive,
including taxes."[10]  Aldine's claim for unpaid taxes clearly falls
within the term "claims" actually used in the section.  Aldine's distinction between "in
personam" and "in rem" proceedings is irrelevant, because the
legislature used neither term in defining jurisdiction in section 5C.[11]

Second,
even if section 5C applied only to "claims for money," Aldine's claim
qualifies.  Aldine's probate filing
stated a claim "for the payment of delinquent ad valorem taxes," not
a claim for title or possession of any real properties.  The only attachments to its claim were
delinquent tax statements, not the judgments ordering foreclosure.  Aldine's claim was clearly a claim for money.

 








Rejection of Unnecessary Claims

Next,
Aldine argues it was not required to present a probate claim, and thus
rejection of its claim did not invoke the 90‑day limitations period.  This Court and others have applied just such
a rule to allow recovery of title against an estate even when no suit was filed
within 90 days of rejection.[12]  But in those cases, the creditor was
asserting a vendor's lien, and thus had a superior claim to title.  

Aldine
has only lien claims; it has no claim to the properties beyond the amount it
was owed for taxes.[13]  The judgments it had obtained ordered
foreclosure of its tax liens on some of the properties, but did not transfer
title to Aldine or extinguish the tax liens.[14]  As noted above, the claim Aldine actually
filed was a claim for money secured by a lien. 
Aldine is indistinguishable from other creditors holding liens as
security, and the Probate Code has specific methods for presenting and handling
such claims.[15]  And it grants them priority in payment.[16]  








Additionally,
dependent administration under the Probate Code is intended to ensure the
orderly disposition of a decedent's estate, [17]
and Aldine's argument would thwart this purpose.  If taxing units may foreclose on and sell
estate property at any time during an administration without court approval, it
will be difficult for the court or creditors to know what assets the estate
has.  As taxing units have no interest in
such properties beyond the taxes due on them, they may sell at prices below
what others might obtain, thus decreasing the estate that remains for other
creditors or heirs.  Section 5C
recognizes this interest in orderly administration, specifically barring taxing
units that file a probate claim from bringing suit in any other court until
four years after the probate proceedings began.[18]

It
is true section 5C allows taxing units to opt out of probate proceedings in the
same county.  But here Aldine opted
in.  Whatever the prior rule may have
been, section 5C does not allow Aldine to file a probate claim and then ignore
probate procedures.

Constitutionality

Finally,
Aldine argues section 5C does not govern this suit because it violates the
state constitutional restriction on legislative acts releasing citizens from
the payment of county taxes.[19]  But a statute establishing general procedures
for tax suits is not unconstitutional under this provision merely because a
taxing unit's carelessness may render specific taxes uncollectible.[20]








There
are many statutes restricting the time, place, and manner of collections by taxing
units.[21]  Under Aldine's argument, they would all be
unconstitutional whenever a taxing unit failed to comply with them, as the
taxes would then be "released." 
We hold section 5C is not a release of taxes.

Conclusion

In
this case, Aldine could have collected the delinquent taxes by (1) seeking
foreclosure without filing a claim in probate court, or (2) filing a claim in
probate court and then following up with a suit 90 days after its probate claim
was rejected.  It did neither.  Once Aldine chose to file a probate claim,
the Code required it to comply with normal probate claims procedures.  Because it did not, those procedures bar
collection of these taxes from the Estate.

Accordingly,
the probate court's summary judgment order is reversed, and judgment rendered
that Aldine's tax claims against the Estate regarding the subject properties
are barred.  

 

 

 

/s/        Scott
Brister

Chief Justice

 

 

 

Judgment rendered and Opinion on Rehearing filed
September 4, 2003.

 

Panel consists of Chief Justice
Brister and Justices Fowler and Edelman.

 











[1]  See Tex. Prob. Code '' 309‑10, 313.





[2]  See Lubbock
County, Tex. v. Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 583 (Tex.
2002).





[3]  '       5C.
Actions to Collect Delinquent Property Taxes

(a) This section applies only to a decedent's estate
that:

(1) is being administered in a pending probate
proceeding;

(2) owns or claims an interest in property against
which a taxing unit has imposed ad valorem taxes that are delinquent; and

(3) is not being administered as an independent
administration under Section 145 of this code.

(b) Notwithstanding any provision of this code to the
contrary, if the probate proceedings are pending in a foreign jurisdiction or
in a county other than the county in which the taxes were imposed, a suit to
foreclose the lien securing payment of the taxes or to enforce personal
liability for the taxes must be brought under Section 33.41, Tax Code, in a
court of competent jurisdiction in the county in which the taxes were imposed.

(c) If the probate proceedings have been pending for
four years or less in the county in which the taxes were imposed, the taxing
unit may present a claim for the delinquent taxes against the estate to the
personal representative of the estate in the probate proceedings.

(d) If the taxing unit presents a claim against the
estate under Subsection (c) of this section:

(1) the claim of the taxing unit is subject to each
applicable provision in Parts 4 and 5, Chapter VIII, of this code that relates
to a claim or the enforcement of a claim in a probate proceeding; and

(2) the taxing unit may not bring a suit in any other
court to foreclose the lien securing payment of the taxes or to enforce
personal liability for the delinquent taxes before the first day after the
fourth anniversary of the date the application for the probate proceeding was
filed.

(e) To foreclose the lien securing payment of the
delinquent taxes, the taxing unit must bring a suit under Section 33.41, Tax
Code, in a court of competent jurisdiction for the county in which the taxes were
imposed if:

(1) the probate proceedings have been pending in that
county for more than four years; and

(2) the taxing unit did not present a delinquent tax
claim under Subsection (c) of this section against the estate in the probate
proceeding.

 (f) In a suit
brought under Subsection (e) of this section, the taxing unit:

(1) shall make the personal representative of the
decedent's estate a party to the suit; and

(2) may not seek to enforce personal liability for the
taxes against the estate of the decedent

 





[4]  Id. ' 5C(b).





[5]  Id. ' 5C(c)‑(e).





[6]  Id. ' 5C(d)(1).





[7]  See id.
' 309B10.





[8]  See id.
' 313.





[9]  Id. ' 5C(a)





[10]  Id. ' 3(c)





[11]  While the
Twelfth Court of Appeals mentioned the "in rem" and "in
personam" distinction in Phifer v. Nacogdoches County Central Appraisal
District, it decided the case by applying the terms of section 5C, as we do
here.  See 45 S.W.3d 159, 168 (Tex. App.‑Tyler
2000, pet. denied).  Similarly, the Fifth
Court of Appeals mentioned the distinction in Highland Park Independent
School District v. Thomas, but decided the case on the basis that it
involved an independent administration, which section 5C does not reach.  See 139 S.W.2d 299, 301 (Tex. Civ.
App.‑Dallas 1940, no writ).





[12]  See Walton
v. First Nat'l Bank of Trenton, 956 S.W.2d 647, 652 (Tex. App.‑Texarkana
1997, writ denied); Lusk v. Mintz, 625 S.W.2d 774, 776 (Tex. App.‑Houston
[14th Dist.] 1981, no writ).





[13]  See Tex. Tax Code ' 33.53(e) (requiring taxing unit to release tax lien
if owner pays delinquent taxes before foreclosure sale); ' 34.02(d) (requiring proceeds in excess of tax lien to
be returned to court clerk).





[14]  See id. ' 34.01(k) (providing property may be bid off to taxing
unit, which then takes title for all taxing units holding liens); ' 34.01(q)(1) (providing tax liens are extinguished by
foreclosure sale to person other than taxing unit).





[15]  See Tex. Prob. Code ' 306 (entitled "Method of Handling Secured Claims
for Money").





[16]  See Tex. Prob. Code ' 322 (giving priority to payments of "[s]ecured
claims for money under Section 306(a)(1), including tax liens, so far as the
same can be paid out of the proceeds of the property subject to such mortgage
or other lien").





[17]  See Tex. Prob. Code '' 319‑21 (requiring court approval of all
payments in statutory priority, with pro rata payments when assets are
deficient).





[18]  See id.
' 5C(d)(2)





[19]    "The
Legislature shall have no power to release the inhabitants of, or property in,
any county, city or town from the payment of taxes levied for State or county
purposes, unless in case of great public calamity in any such county, city or
town, when such release may be made by a vote of two‑thirds of each House
of the Legislature."  Tex. Const. art. VIII, '10.





[20]  See Mexia
Indep. Sch. Dist. v. City of Mexia, 133 S.W. 2d 118, 122 (Tex. 1939)
(holding statute requiring parties in tax suit to take notice of subsequent
pleadings was not unconstitutional when City failed to take such notice).





[21]  See, e.g.,
Tex. Tax Code ' 33.05(a)(2) (barring suit against real property to
collect taxes delinquent more than 20 years); ' 42.06
(requiring notice of appeal within 15 days of adverse appraisal review board
order); ' 42.22 (establishing mandatory venue for judicial
review).