02-10-279-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00279-CV

 

 


 
 
 VICTOR
 J. BURGESS, INDIVIDUALLY AND D/B/A EYDIE’S BAIL BONDS, AND EDITH BURGESS,
 INDIVIDUALLY AND D/B/A BURGESS BAIL BONDS
 
 
  
 
 
 APPELLANTS 
 AND APPELLEES
 
 
 
 
  
 V.
  
 
 
 
 
 Denton County, Texas; The Denton County Bail Bond
 Board; Sherri Adelstein, in her Official Capacity as Denton County District
 Clerk, and as Presiding Chairperson of the Denton County Bail Bond Board;
 Cynthia Mitchell, in her Official Capacity as Denton County Clerk; Ben Parkey,
 in his Official Capacity as Sheriff of Denton County; and Jim Dotson, Michael
 Truitt, Jerry Rayburn, John Hatzenbuhler, Ken Jannereth, and Ron Smith, in
 their Official Capacities as Constables for Denton County
 
 
  
 
 
 APPELLEES
 AND APPELLANTS
 
 


 

 

----------

FROM THE 16th
District Court OF Denton COUNTY

----------

OPINION

----------

Appellants
Victor J. Burgess, individually and d/b/a Eydie’s Bail Bonds, and Edith
Burgess, individually and d/b/a Burgess Bail Bonds (the Burgesses), filed this
interlocutory appeal from the trial court’s denial of their motion for a
temporary injunction during the pendency of their declaratory judgment action. 
Appellees Denton County, Texas; the Denton County Bail Bond Board; Sherri
Adelstein, in her official capacity as Denton County District Clerk
and as presiding chairperson of the Denton County Bail Bond Board; and Cynthia
Mitchell, in her official capacity as Denton County Clerk (collectively Denton
County); Ben Parkey, in his official capacity as Sheriff of Denton County; and
Jim Dotson, Michael Truitt, Jerry Rayburn, John Hatzenbuhler, Ken Jannereth,
and Ron Smith, in their official capacities as constables for Denton County (law
enforcement defendants) (all collectively Appellees) filed a cross-appeal from
the trial court’s denial of their pleas to the jurisdiction.  We affirm in part
and reverse in part.  Because we hold that the trial court did not err by
denying Appellees’ pleas to the jurisdiction, we affirm those orders of the
trial court.  Because we hold that the trial court abused its discretion by
denying the Burgesses’ temporary injunction, we reverse the trial court’s
denial of the temporary injunction and remand this cause to the trial court for
the court to grant the Burgesses’ motion for temporary injunction in accordance
with this opinion.

I.  Background

This
appeal arises out of the Burgesses’ challenge to a fee assessed by the district
clerk and county clerk of Denton County for service of citation by certified
mail.  Victor had previously challenged the same fee after he posted the bond
for a defendant in a criminal case.[1] 
The defendant did not appear at a court hearing, and the trial court
consequently signed a judgment nisi forfeiting the bond.[2] 
After receiving notice, Victor filed an answer.[3] 
The State filed a motion for summary judgment in which it asserted that Victor
was required to pay court costs for the service of citation upon him.[4] 
Victor argued in response that the State was not entitled to recover that cost.[5] 
The trial court signed a judgment in favor of the State that included an award
for costs assessed by the district clerk.[6] 
The bill of costs included $68 for citation by certified mail.[7]

Victor
appealed and argued that the assessment of the $68 cost was unlawful because
the Denton County Commissioners Court had not authorized the cost.[8] 
This court held that, based on the record before us, the commissioners court
had authorized charging a $60 fee for service of citation by certified mail and
that the government code authorized the district clerk to charge an $8 fee for
issuing a citation.[9]

Victor
also argued that the $60 cost was unlawful because it was not reasonable and was
higher than necessary to pay the expense of the service.[10] 
Noting that Victor’s suit “was not filed for the purpose of attacking the
commissioners court’s order” and was one in which “none of Denton County, the
commissioners court, any of the commissioners court’s members, nor the district
clerk (who collects the fee at issue) ha[d] been made parties,” this court
overruled this issue on the ground that Victor’s challenge to the commissioners
court order authorizing the $60 was an impermissible collateral attack.[11]

After
this court handed down its opinion, the Burgesses brought this suit challenging
the $60 fee.  The Burgesses sued Denton County and the law enforcement
defendants.  The Burgesses sought a temporary restraining order, temporary
injunction, and permanent injunction prohibiting Appellees from assessing,
imposing, or collecting from them the certified mail fee.  The Burgesses also
sought a declaratory judgment that the sixty-dollar certified mail fee as
ordered by the Denton County Commissioners Court is invalid and in violation of
Texas law.

At
the hearing on the Burgesses’ request for a temporary injunction, the district
clerk for Denton County testified that to prepare a citation for service by
mail, her office uses a web-based service to create the citation, which takes
two to four minutes depending on the clerk.  The clerk prints out the document,
prepares an envelope and return receipt, and takes it to the county’s mail
department, which puts postage on the envelope.  She stated that she believed
that the fee charged by the service per document was around eighty cents and
that the United States Postal Service charges $2.80 for certified mail, plus
$1.10 for return receipt requested.  The clerk’s office charges an $8.00 fee
for issuing the citation, and this fee is not part of the $60 that it charges
for service of the citation.  She testified that she collects a $60 fee for
service by certified mail not because of the costs to her office but because of
her belief that the commissioners court had set that amount as the fee for
sheriffs and constables in providing the same service.

Jim
Dotson, a Denton County constable, testified that if someone in his office has
ever provided service of citation by certified mail, “it’s very seldom,” and
that he had never done it, although he was “sure some of the employees have.”  Dotson
also serves on the committee that makes recommendations to the commissioners
court regarding the fees that the court sets for services provided by sheriffs
and constables.  When asked if the committee made a determination of what the
necessary expense would be for sheriffs or constables to serve process by
certified mail, he stated that he “[didn’t] remember that being part of it.”

After
the hearing, the trial court sent a letter to the parties stating that “[i]t is
common knowledge” that employee wages; the cost of equipment and software; and
transportation, filing, and storage costs associated with preparation of
service of citation by certified mail “are all factors to be considered in
determining the actual cost of goods and services” and that “[t]here was no
showing that the capital costs, personnel costs, or other overhead costs of
Denton County were minimal.”  The trial court entered an order denying the
Burgesses’ application for a temporary injunction “on the basis that [the
Burgesses] cannot show that [Appellees] acted illegally, unreasonably, or
arbitrarily in setting or assessing” the fee.  The Burgesses appeal from that
order.

Regarding
the still-pending declaratory judgment claim, Appellees filed pleas to the
jurisdiction asserting that the trial court did not have jurisdiction because,
due to “bond forfeiture lawsuits now pending in Denton County,” another court
had exclusive jurisdiction over the suit.  They also asserted legislative
immunity.  The trial court denied the pleas, and Appellees brought this
cross-appeal.

II. 
The Burgesses’ Appeal

In
the Burgesses’ sole issue, they argue that the trial court erred and abused its
discretion by denying their application for a temporary injunction.  They ask
this court to reverse the trial court’s order denying the application and to
remand this case for the trial court to enter a temporary injunction enjoining
Appellees from assessing or imposing against or collecting from them the
challenged certified mail fee until final disposition of the case.

Standard of Review

The
purpose of a temporary injunction is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.[12]  To
be entitled to a temporary injunction, the applicant must plead a cause of
action and further show both a probable right to recover on that cause of
action and a probable, imminent, and irreparable injury in the interim.[13]  A
probable right of recovery is shown by alleging a cause of action and
presenting evidence tending to sustain it.[14]  An
injury is irreparable if damages would not adequately compensate the injured
party or if they cannot be measured by any certain pecuniary standard.[15]

In
an appeal from an order granting or denying a temporary injunction, the scope
of review is restricted to the validity of the order granting or denying
relief.[16]  Whether
to grant or deny a request for a temporary injunction is within the trial
court’s discretion, and we will not reverse its decision absent an abuse of
discretion.[17]  A
trial court does not abuse its discretion if it bases its decision on
conflicting evidence and at least some evidence in the record reasonably
supports the trial court’s decision.[18] 
When the trial court does not file findings of fact or conclusions of law, we
must uphold the court’s order on any legal theory supported by the record.[19]

Analysis

As
the Burgesses point out, the trial court based its denial of their application
for a temporary injunction on the “probable right to recover” element,
specifically “on the basis that [the Burgesses could not] show that [Appellees]
acted illegally, unreasonably, or arbitrarily in setting or assessing the
service of citation by certified mail fee.”  The Burgesses contend that the
commissioners court of Denton County did not authorize a fee of $60 for service
of process by certified mail, or, alternatively, if it did, it acted
unreasonably and arbitrarily when it did so.

The
legislature has provided in government code section 51.319 that district clerks
must collect fees for certain services.[20] 
The district clerk has no discretion to not collect the fees discussed in that
section.[21] 
Section 51.319 discusses two specified categories of services and has one
general catchall provision.  In subsection (1), which is not at issue in this
case, the legislature set the fees for providing services relating to the
matter of the estate of a deceased person or a minor.[22] 
Subsection (2), applicable to this case, relates to service of process by
mail.  The legislature has delegated to a county commissioners court the
ability to set the fee that sheriffs or constables are authorized to charge for
providing service of citation by certified or registered mail,[23] and
under subsection (2), the legislature has directed the district clerk to
collect the same fee when the clerk provides that service.[24] 
Specifically, the statute says that “[t]he district clerk shall collect . . .
for serving process by certified or registered mail, the same fee that sheriffs
and constables are authorized to charge for the service under [local government
code section 118.131].”[25]

Under
local government code section 118.131, what the sheriffs and constables “are
authorized to charge” is a reasonable fee that may be set by the commissioners
court and that may not be “higher than is necessary to pay the expenses of
providing the service.”[26]  In
other words, if the commissioners court has set a fee for a sheriff’s or
constable’s service of citation by certified mail, then that is the fee that
the district clerk must collect when providing that service.  The amount of the
fee that a district clerk must charge is therefore based on the costs to a
sheriff or constable in providing the service and not the cost to the district
clerk.  That is, this fee may be more than the cost a district clerk incurs in
providing the service, but it may not be higher than is actually necessary to
cover the costs of the sheriff or constables in serving citation by certified
or registered mail.[27]

In
summary, section 118.131 allows the commissioners court to set a reasonable fee
for service by certified mail by a sheriff or constable, and if the
commissioners court has done so, then the district clerk must charge the same
fee.  But what if the commissioners court has not set a fee for providing that
particular service?  Section 118.131 addresses that scenario, providing that
for services for which the commissioners court has not set a fee, the fees for
the services “are those fees provided by law in effect on August 31, 1981.”[28]

As
with the district clerk, the county clerk is also directed to collect a fee for
service of process by certified or registered mail, and this fee is also set at
whatever fee the sheriffs have been authorized to charge for that service by
the commissioners court.[29] 
Like the district court, the county clerk has no discretion to not collect a
fee for providing the service.[30] 
Thus, to determine what fee Appellees should be charging for providing service
of citation by certified or registered mail, we first look to see what fee, if
any, the commissioners court has authorized sheriffs and constables to charge
for providing that same service.

In
our opinion in Victor’s previous action, we stated that 

[a]lthough Burgess contended during oral argument that
the word “citation” in the commissioners court’s schedule of sheriff/constable
fees refers only to service by personal delivery rather than by certified mail,
nothing in the schedule of fees or in the remainder of the record
indicates that the commissioners court intended to limit the meaning of the
word “citation” in that way, and the rules of civil procedure and Texas courts
signal that Texas sheriffs and constables may serve citation by certified mail,
not only by personal delivery.  Therefore, we hold that the commissioners
court’s authorization of a $60 fee for service of an unspecified manner of
“citation” authorizes the charging of that fee when the citation is served by
certified mail.[31]

In
this action, however, the Burgesses offered and the trial court admitted
evidence that, according to the Burgesses, shows that the commissioners court
did not intend to include service by mail in its fee schedule.

One
piece of such evidence is a copy of the video taken of the commissioners court
meeting on September 29, 2009, at which the fees in question were approved. 
The commissioners did not discuss the reasonableness of the fee for service of
citation, how the fee was determined, or, importantly, whether the fee was
intended to cover service by certified or registered mail.  Dotson, who has
since 2005 served on the committee that makes recommendations to the
commissioners court about such fees, testified that he did not remember the
committee discussing service by certified mail; that to his knowledge, “it was
not on the fee list”; and that the committee made no findings about that manner
of service.

This
testimony is evidence that the commissioners court did not make any findings
about the reasonableness of a fee for citation by certified mail performed by
sheriffs or constables and did not consider evidence to determine what fee
would be necessary to cover the expenses of providing such a service. 
According to Dotson’s testimony, the commissioners court did not consider the
factors that it was required to consider before setting such a fee.[32] 
But more than that, the complete absence of any evidence that this type of
service was even discussed, and the affirmative evidence that in fact this type
of service was not considered by the committee in making its recommendation to
the commissioners court (or by the court at the meeting approving the fees), is
circumstantial evidence that the commissioners court did not set a fee for
service by certified mail and did not intend to do so.[33] 
Appellees produced no contradictory evidence suggesting either that the
commissioners court considered the cost of providing service by certified mail
or that they intended to authorize the fee for sheriffs and constables to
charge when providing that type of service.

If
the commissioners court did not set a fee for service by certified or
registered mail under section 118.131, then the fee that sheriffs and
constables are authorized to charge (and, therefore, the fee that the district
clerk and county clerk are authorized to charge) is the fee provided by law for
that service as of August 31, 1981.[34]  If
no such fee has been set, based on the record before us,[35] Appellees
have no authority to assess the amount of $60 as a fee unless that was the
amount of the fee as set by law as of August 31, 1981.[36] 
From the limited record, it appears that not only has the commissioners court
not set the fee at an amount no higher than is necessary to pay the expense of
providing service of citation by certified or registered mail, the
commissioners court has not set any fee at all for that service.  Accordingly,
we hold that the Burgesses have shown a probable right to recovery on their
declaratory judgment action.  We therefore hold that the trial court abused its
discretion by denying the application for temporary injunction “on the basis
that [the Burgesses could not] show that [Appellees] acted illegally,
unreasonably, or arbitrarily in setting or assessing the service of citation by
certified mail fee.”

Because
no findings of fact and conclusions of law were filed,[37] we
must affirm the trial court’s order on any legal theory supported by the
record.[38]  We
therefore must also consider whether the Burgesses (1) pled a cause of action
and (2) demonstrated a probable, imminent, and irreparable injury during the
pendency of their case.[39] 
The Burgesses pled a cause of action under the declaratory judgment statute in
that they are persons whose rights are affected by a statute (namely, the fee
statutes at issue here), and they seek a declaration of their “rights, status,
or other legal relations thereunder.”[40]

As
for the injury requirement, they argued—and Edith testified at the hearing—that
the Denton County Bail Bond Board’s policy is that if a bail bond company does
not pay an outstanding judgment arising from a judgment nisi by the
thirty-first day after it has been entered, the board suspends the company’s
license.  And by law, the Denton County Bail Bond Board is required to notify
the sheriff if a bail bond surety fails to pay a final judgment of forfeiture
not later than the thirty-first day after the date of the judgment.[41] 
Upon receiving such notification, the sheriff is prohibited from accepting any
bonds from the bail bond surety until the judgment is paid; and the board must,
after notice and hearing, revoke the surety’s license if the surety fails to
pay the judgment.[42] 
Thus, if fees of $60 are not authorized but are nonetheless included in a bill
of costs, the Burgesses would have to pay the unauthorized fees or risk losing
their licenses.

At
the same time, if any of the trial courts in which bond forfeiture proceedings
are pending assess the fee for service by certified mail, the Burgesses may not
challenge the reasonableness of the fee in that proceeding.[43] 
Furthermore, if the Burgesses were required to pay the fee while this case is
pending below, then even if it is finally determined that the authorized fee is
less than $60, the Burgesses could potentially be barred by limitations from
seeking reimbursement for the unauthorized portion of the fee that they paid,
depending on when this case is finally determined.[44] 
The Burgesses therefore met their burden to show probable and imminent injury
as well as the lack of an adequate remedy at law.[45]

Appellees
argue that the Burgesses have an adequate remedy because they have the option
of waiving citation and therefore not being assessed the fee.  The Burgesses
should not be required to waive their rights to notice in order to obtain
equitable relief to which they would otherwise be entitled.  Appellees also
argue that the Burgesses could ask for stays in the pending bond forfeiture
cases.  Requiring the Burgesses to file for a stay in each of the hundreds of
pending cases is not as practical and efficient as enjoining Appellees from
collecting the fee,[46]
even assuming that the trial court in each case would grant the requested
relief.  We therefore hold that the Burgesses have demonstrated the absence of
an adequate remedy at law.

Having
held that the Burgesses are entitled to some form of injunctive relief, we must
now determine what manner of relief will serve the purpose of an injunction to
preserve the status quo.  We believe that this case is similar to Transport
Co. of Texas v. Robertson Transports, Inc., in which the Texas Supreme
Court considered the validity of a temporary injunction restraining Robertson
Transports from operating or commencing to operate under an order of the
Railroad Commission.[47] 
Robertson, which held a certificate as a specialized motor carrier, filed an
application with the Commission for an amendment to its certificate, which
would authorize it to transport certain chemicals.[48] 
Transport Co. and others objected to the amendment.  After a hearing, the
Commission ordered the amendment.[49] 
Transport Co. then filed suit to invalidate the order, and in its petition, it
sought a temporary injunction to restrain Robertson from operating under the
order.[50]  The
trial court granted the temporary injunction, and the court of appeals
reversed.[51]

On
review, Robertson argued that the Commission’s order granting the certificate
created the status quo, but the court held that if Robertson was correct, then
“a plaintiff could never obtain temporary relief from operation under an
invalid order even though his business was threatened with destruction before a
trial on the merits could be had.”[52] 
The Supreme Court determined that the status quo in that case “was the status
of the controversy as it existed prior to the entry of the Commission’s order.”[53]

In
this case, if the status quo were the clerk’s ability to assess and collect an
unauthorized $60 fee (assuming that the fee was not authorized), then the Burgesses
could never obtain temporary relief from the operation of the invalid
assessment because they would have to choose either risking the loss of their
licenses by not paying the fees or paying fees not authorized by law that they
might not ever be able to recover.  And because the Burgesses contested the
authority of the clerks to assess and collect the $60, the clerks’ assessment
and collection of that amount cannot be the last noncontested status of
the parties.  We conclude therefore that allowing the clerks to continue to
assess and collect from the Burgesses a fee of $60 would not be a preservation
of the status quo.

But
at the same time, the clerks are required by statute to assess a fee of some
amount.  The Burgesses contest the amount of that fee but not the fact that
some fee must be assessed.  Thus, if this court were to order the trial court
to enjoin the clerks from including any fee for the service in a bill of costs
after a final judgment of forfeiture, then we would not be preserving the
status quo.

If
the commissioners court has set a fee for the service, whether at $60 or some
other amount, then that is the fee that the clerks must collect.  If the
commissioners court has not set the fee, then the fee that must be collected is
the amount that was set by law as of August 31, 1981.  But a determination at
this stage as to what specific fee the clerks are actually authorized to charge
would require us make a determination on the merits, and we are prohibited from
doing so.[54] 
Accordingly, we believe the preservation of the status quo can be achieved by a
temporary injunction that would allow the clerks to include the $60 fee for
service by certified or registered mail in the bill of costs and allow the
Burgesses to pay that portion of the bill of costs into the registry of the trial
court in this case.

Thus,
the temporary injunction should not be framed to prevent Denton County trial
courts from adjudicating the bond forfeiture claims in which the Burgesses, as
sureties, are parties.  The trial courts may, as usual, order that costs will
be paid by the sureties without determining the total amount of the specific
costs to be taxed against them in the bill of costs.[55] 
Furthermore, the clerks should not be enjoined from preparing the bill of costs
after a trial court renders judgment in a bond forfeiture case or from taxing
the cost, if any, for service of citation by certified mail, whether that
service was provided by a clerk or by a sheriff or constable.

The
trial court should, however, require the Burgesses to pay any fee assessed for
service of citation by certified or registered mail into the registry of the
trial court in this case and to pay the remainder of the judgment as otherwise
required.  Provided that the Burgesses follow this procedure, the trial court
should enjoin the clerks from issuing execution on the portion of the costs
bill taxing the fee for service by certified or registered mail.[56] 
And because the Burgesses’ payment of the $60 into the trial court’s registry
would satisfy their obligation to pay the portion of the court costs for
service by certified or registered mail, the Burgesses would be protected from
any action by the bail bond board to suspend their licenses on the basis that
they had not paid that portion of a final judgment of forfeiture.  The trial
court should enjoin the bail bond board from taking action to suspend the
Burgesses’ licenses on the basis that they have not paid that portion of the
costs, provided that the amount is paid into the registry of the court.  We
note that the Burgesses represented to the trial court that they were willing
to follow just such a procedure.

An
injunction of this nature will preserve the status quo and protect the rights
of the parties pending final determination of the case below.  If it is finally
determined that the county commissioners have set a fee of $60 for the service
and that this fee is no higher than necessary to pay the expenses of providing
the service, then the funds in the trial court’s registry will be released to
the clerks, putting them in the same position with respect to the fee that they
would have been in had the Burgesses not filed this suit.  If, on the other
hand, it is determined that the allowed fee is some lower amount, then the
clerks will be able to recover that amount, and the remainder will be released
to the Burgesses, protecting the Burgesses from paying more than they are
required under the law.

As a
final note on the framing of this injunction, we acknowledge that the code of
criminal procedure provides that after forfeiture of a bond but before final
judgment, the trial court may (and in some instances must) remit part of the
bond, less certain costs (including court costs), to the surety.[57] 
The trial court should fashion the injunction to address this provision in
light of this opinion.

Having
held that the Burgesses met all the requirements for a temporary injunction, we
hold that the trial court abused its discretion by denying the Burgesses motion
for a temporary injunction, and we sustain the Burgesses’ sole issue.

III. 
Appellees’ Cross-Appeals

On
cross-appeal, Appellees argue in two issues that the trial court erred by
denying their pleas to the jurisdiction based on legislative immunity and based
on lack of jurisdiction over the Burgesses’ declaratory judgment action.

Appellees
assert in their first issue that the commissioners court is entitled to
legislative immunity with regard to its setting the fee for service by
certified mail because its decision as to the fee constitutes a legislative
act.[58] 
But we have held that, based on the record before us, the commissioners court
has not set any such fee.  The commissioners court has therefore not taken an
action that constitutes a legislative act.  Appellees present no other
arguments explaining why they would be entitled to legislative immunity. 
Accordingly, we overrule this issue.

Appellees
argue in their second issue that the trial court erred by denying their pleas
to the jurisdiction because the trial court did not have jurisdiction over the
Burgesses’ declaratory judgment action.  They assert that a declaratory
judgment action is not available to settle disputes already pending before a
court but that the Burgesses seek to have the certified mail fee deemed
unreasonable in bond forfeiture cases that have already been filed in other
trial courts.  Thus, they argue, the reasonableness of a certified mail fee
would be determined in the courts where the bond forfeiture cases were filed.

Based
on our prior holding in Burgess I, the trial court did not err by denying
the pleas to the jurisdiction on this ground.  We have already held that the
Burgesses may not challenge a fee assessed by the commissioners court in a bond
forfeiture proceeding,[59]
and, therefore the bond forfeiture proceedings are not the proper venue for the
Burgesses to pursue the claim that they bring in this suit.  We overrule
Appellees’ second issue.

IV. 
Conclusion

Having
overruled Appellees’ two issues, we affirm the trial court’s denial of the
pleas to the jurisdiction.  Having sustained the Burgesses’ sole issue, we
reverse the trial court’s order denying their motion for temporary injunction
and remand this cause to the trial court with instructions to grant their
motion for temporary injunction in accordance with this opinion.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  January 19, 2012









[1]See Burgess v. State,
313 S.W.3d 844, 847 (Tex. App.—Fort Worth 2010, no pet.) (Burgess I).





[2]Id.





[3]Id.





[4]Id.





[5]Id.





[6]Id.





[7]Id.





[8]Id. at 850.





[9]Id. at 851.





[10]Id.





[11]Id. at 852, 854.





[12]Butnaru v. Ford Motor
Co., 84 S.W.3d 198, 204 (Tex. 2002) (citing Walling v. Metcalfe, 863
S.W.2d 56, 57 (Tex. 1993)).





[13]Id.; Frequent
Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215, 220 (Tex. App.—Fort
Worth 2009, pet. denied), cert. denied, 130 S. Ct. 2061 (2010).





[14]Frequent Flyer Depot,
281 S.W.3d at 220.





[15]Butnaru, 84 S.W.3d
at 204; Frequent Flyer Depot, 281 S.W.3d at 220.





[16]Walling, 863
S.W.2d at 58; Frequent Flyer Depot, 281 S.W.3d at 220.





[17]Butnaru, 84 S.W.3d
at 204; Frequent Flyer Depot, 281 S.W.3d at 220.





[18]Davis v. Huey, 571
S.W.2d 859, 862 (Tex. 1978); Frequent Flyer Depot, 281 S.W.3d at 220.





[19]Davis, 571 S.W.2d at
862.





[20]Tex. Gov’t Code Ann. §
51.319 (West 2005).





[21]Id. (stating that
the district clerk “shall collect the following fees”) (emphasis added).





[22]Id. § 51.319(1).





[23]Tex. Loc. Gov’t Code Ann.
§ 118.131(a), (b) (West 2008).





[24]Tex. Gov’t Code Ann. §
51.319(2).





[25]Id.





[26]Tex. Loc. Gov’t Code Ann.
§ 118.131(a), (b).





[27]Id. § 118.131(b).





[28]Id. § 118.131(h).





[29]Id. §§ 118.052(3)(F)
(“Each clerk of a county court shall collect the following fees for services
rendered to any person:  . . . Mail Service of Process
(Sec. 118.063) . . . same as sheriff.”), .063 (“The fee for ‘Mail
Service of Process’ . . . is for the clerk’s service of process
by certified or registered mail.  The fee is the same amount that sheriffs and
constables are authorized to charge under [s]ection 118.131.”).





[30]Id. §
118.052(3)(F) (stating that the “clerk of a county court shall collect”
a fee to mail service of process) (emphasis added).





[31]Burgess I, 313
S.W.3d at 850–51 (citations omitted) (emphasis added).





[32]See Tex. Loc.
Gov’t Code Ann. § 118.131.





[33]See Tex. First Nat’l
Bank v. Ng, 167 S.W.3d 842, 853 (Tex. App.—Houston [14th Dist.] 2005, pet.
granted, judgment vacated w.r.m.) (“Intent may certainly be proven by
circumstantial evidence.”).





[34]See Tex. Loc.
Gov’t Code Ann. § 118.131(h).





[35]See Davis, 571
S.W.2d at 862 (“This court will not assume that the evidence taken at a
preliminary hearing will be the same as the evidence developed at a full trial
on the merits.”).





[36]See Tex. Loc.
Gov’t Code Ann. § 118.131(h).





[37]The trial court did file
of record a prejudgment letter to the parties stating the basis for its
judgment, but we do not consider this letter to constitute findings of fact or
conclusions of law.  See Cherokee Water Co. v. Gregg County Appraisal Dist.,
801 S.W.2d 872, 878 (Tex. 1990) (stating that a prejudgment letter to the
parties “was not competent evidence of the trial court’s basis for judgment”).





[38]Davis, 571 S.W.2d at
862.





[39]Id.; see also
Butnaru, 84 S.W.3d at 204.





[40]See Tex. Civ.
Prac. & Rem. Code Ann. § 37.004 (West 2008) (providing for declaratory
relief).





[41]Tex. Occ. Code Ann. §
1704.2535(a) (West 2004).





[42]Id. §§ 1704.253, .2535(b).





[43]Burgess I, 313
S.W.3d at 854 (“Burgess’s challenge to the commissioners court’s order is not
an assertion that the order is void, and . . . the challenge may
not be made in this collateral bond forfeiture proceeding but must instead be
raised in a separate action.”).





[44]See Lubbock Cnty., Tex.
v. Trammel’s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (holding
that a cause of action seeking reimbursement from a county for unauthorized
charges accrues when the payment to the county is made).





[45]See TCA Bldg. Co, v.
Nw. Res. Co., 890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no writ) (noting
that damages alone do not provide an adequate remedy when the damage award may
come too late to save the applicant’s business).





[46]Frequent Flyer Depot,
281 S.W.3d at 229 (stating that an adequate remedy is one that is as complete,
practical, and efficient to the prompt administration of justice as is
equitable relief).





[47]152 Tex. 551, 555, 261
S.W.2d 549, 551–52 (1953).





[48]Id. at 553, 261
S.W.2d at 550.





[49]Id. at 553–54, 261
S.W.2d at 551.





[50]Id. at 554, 261
S.W.2d at 551.





[51]Id.





[52]Id. at 558, 261
S.W.2d at 554.





[53]Id.





[54]See Reach Group,
L.L.C. v. Angelina Group, 173 S.W.3d 834, 837 (Tex. App.—Houston [14th
Dist.] 2005, no pet.) (“At a temporary injunction hearing, the ultimate merits
of the case are not before the trial court.”); see also Davis, 571
S.W.2d at 862 (holding that the appellate court erred in its review of a
temporary injunction by giving full consideration to the merits of the
underlying lawsuit).





[55]See Madison v.
Williamson, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet.
denied) (noting that the trial court’s role is to adjudicate which party is
responsible for paying the costs of court but not to determine the correctness
of specific items; that the judgment should not state the amount taxed as costs,
but only that costs are awarded against a certain party; and that it is the
ministerial duty of the clerk to tax costs in accordance with the rules of
civil procedure); see also Tex. Code Crim. Pro. Ann. art. 22.16 (West
2009) (setting out when the trial court may, after forfeiture, remit to the
surety the amount of the bond less costs), art. 103.001 (West 2006) (“A cost is
not payable by the person charged with the cost until a written bill is
produced or is ready to be produced, containing the items of cost, signed by
the officer who charged the cost or the officer who is entitled to receive
payment for the cost.”).





[56]See Tex. R. Civ.
P. 129 (providing that when a party fails to pay costs within ten days after
demand, the clerk may make a certified copy of the bill of costs and provide it
to the sheriff or constable for collection); Tex. R. Civ. P. 149 (providing
that when costs have not been paid, the clerk may issue execution against the
party owing the costs); see also Tex. Code Crim. Pro. Ann. art. 22.14
(West 2009) (providing that execution shall issue against each party for the
amount adjudged against him in a final judgment of forfeiture).





[57]See Tex. Code
Crim. Pro. Ann. art. 22.16.





[58]See Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004) (discussing legislative
immunity); Brown v. Lubbock Cnty. Comm’r Court, 185 S.W.3d 499, 505
(Tex. App.—Amarillo 2005, no pet.) (holding that the members of the
commissioners court had legislative immunity for their performance of
legislative functions).





[59]See Burgess I, 313
S.W.3d at 854.